### LEVINE et al. v. UNITED STATES.
#### No. 7809.

Circuit Court of Appeals, Ninth Circuit.
Sept. 9, 1935.

Rehearing Denied Oct. 28, 1935.

Sherwood & Heiman, Revelle, Simon & Coles, and H. Sylvester Garvin, all of Seattle, Wash., for appellants.

J. Charles Dennis, U. S. Atty., and John Ambler, Asst. U. S. Atty., both of Seattle, Wash., for the United States.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

MATHEWS, Circuit Judge.

The indictment in this case was in seven counts, six of which charged Henry L. Levine, Robert M. Brown, J. L. Hodge, Mandel Michaelson, Benjamin Hendison, and three other defendants with using the mails in execution of a scheme for obtaining money by means of false and fraudulent pretenses, representations, and promises (Criminal Code, § 215, 18 USCA § 338). The seventh count charged them with conspiring to commit the offenses described in the other six counts (Criminal Code, § 37, 18 USCA § 88). Levine, Brown, Michaelson, and Hendison were convicted and sentenced on all counts of the indictment. Hodge was acquitted on the third and fifth counts and was convicted and sentenced on all the others. All the named defendants have appealed.

The scheme charged in the indictment was, in substance, that defendants would organize the Western States Gold Properties Corporation and would sell its stock at highly inflated prices; that such sales would be made by defendants through Maxwell Gates & Co., a corporation operated by defendants for that purpose

only; that, to effect such sales, defendants would solicit orders for the purchase of stock of General Motors Corporation and, after securing such orders and the money of such intending purchasers, would induce them to change their orders and invest their money in stock of Western States Gold Properties Corporation; and that defendants would thereby obtain for themselves the money paid for such stock by the purchasers thereof.

This was to be accomplished by means of false pretenses, representations, and promises to the effect that Maxwell Gates & Co. was a legitimate brokerage concern doing a general brokerage business; that a pool had been formed for the purchase of stock of General Motors Corporation and had been able to purchase such stock below the market price; that investors purchasing such stock through Maxwell Gates & Co. would be permitted to share in the profits of said pool; that the stock of Western States Gold Properties Corporation was about to be listed on the New York Exchange; that investors purchasing said stock through Maxwell Gates & Co. would be able to sell it at a great profit; that Maxwell Gates & Co. would advise them when to sell and would make such sales for them; that a deal had been consummated whereby the property and assets of Western States Gold Properties Corporation would be sold to another corporation on terms which would give the stockholders $2 in cash for each dollar invested; that there was still opportunity for investors to purchase the stock of Western States Gold Properties Corporation at $1 per share; and that, by so doing, they would double their money in two or three weeks, without any risk whatsoever.

The indictment alleges, and the jury by their verdict found, that, having devised this scheme, defendants conspired to, and did, in execution thereof, place and cause to be placed in the post office at Seattle, Wash., to be sent and delivered by the post office establishment of the United States, the letters and circulars described in the indictment.

Appellants assign as error the denial of their motion for a directed verdict, thereby raising the question of the sufficiency of the evidence to sustain the verdict. We have examined the evidence and find it amply sufficient. The facts which it establishes or tends strongly to establish are as follows:

On September 19, 1933, appellants Brown and Hodge and one Milton S. Hurwitz organized the Western States Gold Properties Corporation, with a capital stock of 500,000 shares, which, without any consideration whatever, were issued to Hurwitz for the use and benefit of Brown, Hodge, and Hurwitz. The ostensible purpose of this corporation was to engage in the gold mining business. It never engaged in that or any other business, and never acquired or owned any property or assets of any kind or character. Its stock was worthless, and Brown, Hodge and Hurwitz knew it was worthless. Nevertheless, in September, October, November, and December, 1933, they and their agents and associates sold to a gullible and unsuspecting public 114,875 shares of this worthless stock and collected therefor $52,861.42, which, after paying commissions and selling expenses, was pocketed by Brown, Hodge, and Hurwitz. None of it went to the corporation.

Associated with Brown, Hodge, and Hurwitz in this fraudulent enterprise were several high-pressure salesmen, among whom were appellants Levine, Michaelson, and Hendison. These salesmen were former employees of Brown, and, like him, were well versed in the art of selling worthless stocks. They received commissions on their sales of Western States Gold Properties Corporation stock. They also knew perfectly well that this stock was worthless, and that, in selling it, they were perpetrating a fraud.

All sales of Western States Gold Properties Corporation stock were made through Maxwell Gates & Co., a corporation organized by Brown for the ostensible purpose of engaging in the brokerage business. It never engaged in that business nor in any business except that of selling stock of Western States Gold Properties Corporation. It was, in fact, a mere alias, a name under which, a mask behind which, appellants carried on their stock selling operations. Maxwell Gates & Co. had an office in Seattle, Wash., in and from which appellants carried on their campaign for the sale of Western States Gold Properties Corporation stock. All the appellants frequented the office of Maxwell Gates & Co. and actively participated in this selling campaign, in

the course of which, and as a part of which, they mailed the letters and circulars described in the indictment.

Appellants in many instances effected sales of Western States Gold Properties Corporation stock by first soliciting orders for the purchase of stock of General Motors Corporation at prices several points below the market. After securing such orders and the money of such intending purchasers, appellants would inform them that they could not purchase General Motors Corporation stock at the prices named, and would then advise and induce such purchasers to change their orders and "invest" their money in the stock of Western States Gold Properties Corporation. In some instances appellants did not trouble to obtain their victims' consent before making such "investments" for them. In method, as in purpose, their whole campaign was fraudulent and dishonest.

All sales of Western States Gold Properties Corporation stock were made by means of false pretenses, representations, and promises, including those set forth in the indictment and many others. For example, in a letter prepared by Brown, Hodge, and Hurwitz, signed by Hodge and mailed by appellants to several hundred prospective purchasers of stock, it was stated that "The Western States Gold Properties Corporation owns and controls 17 claims and 134 patented acres situated in the famous Gold Hill Mining region of Southwestern Oregon," which statement, as appellants well knew, was an absolute falsehood. This is a fair sample of the misrepresentations by which appellants' victims were duped and defrauded.

█ Without going into further detail, it suffices to say that the evidence warrants the conclusion that appellants devised the scheme and entered into the conspiracy alleged in the indictment; that each and all of them participated therein, and that, in execution and furtherance thereof, they mailed or caused to be mailed the letters and circulars described in the indictment. We hold, therefore, that, the jury's verdict is sustained by the evidence.

█ Appellants assign as error the admission of the Government's Exhibit 9 in evidence, the admission of the testimony of the government's witness Sawyer concerning representations made to him by one Lee, and the denial of appellants' motion to strike Sawyer's testimony. These assignments do not "quote the full substance of the evidence admitted," as required by our rule 11, and are, therefore, disregarded.

█ Appellants assign as error the alleged failure of the District Court to limit the effect of testimony concerning conversations and transactions with individual defendants, out of the presence of other defendants, by instructing the jury to disregard such testimony, except as to the defendants with whom such conversations and transactions were had, unless and until the jury should find that such conversations and transactions were authorized by the other defendants, or that the other defendants were parties to the conspiracy or to the scheme alleged in the indictment. They also assign as error the alleged failure of the District Court to limit, in the manner just stated, the effect of testimony concerning conversations and transactions with stock salesmen employed by defendants. These assignments are without merit. The only purpose or effect of the evidence therein referred to was to show that certain false pretenses, representations and promises were made by the persons with whom the conversations and transactions were had. The District Court sufficiently limited the effect of this evidence by instructing the jury as follows: "You are instructed a particular defendant or defendants herein is, or are, not liable for any false pretense or promise or representation unless such particular defendant or defendants personally made such false pretense, promise or representation or authorized the making of the same. * * * In this connection, you are instructed that you are not to consider any statements made by any defendant in the absence of the other defendants, except as against the individual making the statements, unless you are convinced beyond all reasonable doubt that the defendant so making such statements was authorized by another or other of the defendants to make the statement in question, and in such case you will consider such evidence only as against the defendant actually making the statement and such other defendants only as you shall be convinced beyond all reasonable doubt, if you are convinced, authorized the making of such statement."

■ Benjamin Ross, a codefendant of appellants, entered a plea of nolo contendere and was thereafter called as a government witness and testified that he was employed during the fall of 1933 by Maxwell Gates & Co.; that he worked part of the time in Seattle and part of the time in Bremerton; and that, while so employed he had business relations with one Macomber, talked with Macomber and one Strong, and solicited business from one Stull. The witness did not state the nature of his employment, the business transacted or solicited by him or the conversations referred to. Before he could be further questioned, counsel for appellants objected to his testimony as being hearsay, whereupon counsel for the government asked that the witness be withdrawn and his testimony stricken. To this counsel for appellants objected, stating: "I insist the testimony stand in the record. I feel I have a right to cross-examine, inasmuch as testimony has been given and is before the jury." The court thereupon granted the government's request, permitted the witness to be withdrawn, ordered his testimony stricken, and instructed the jury to disregard it.

This action of the court was excepted to and is assigned as error, appellants claiming that they were thereby denied the right of cross-examining the witness. The claim is unfounded. Appellants' counsel did not attempt or ask leave to cross-examine the witness, but contented himself with the statement that he felt he had the right to do so. Appellants cannot complain of the deprivation of a right which they made no effort to exercise. State v. Crosby, 160 S. C. 301, 158 S. E. 685. Whether, under the circumstances, appellants had a right to cross-examine the witness, and whether the denial of that right, if it existed, would have been prejudicial error, it is unnecessary to decide.

■ The government's witness Moore, a mining engineer, testified that appellant Hodge arranged with him to examine a certain mining property, to determine whether or not it would be worth putting money into and operating; that in return for this service he, Moore, was to receive an interest in the property; that he did examine it in April, 1933, and was favorably impressed; that he examined it again in July, 1933, and, as a result thereof, changed his views concerning the property and thereupon terminated his relations with Hodge. The witness also identified a letter written by him to Hodge on July 30, 1933, which, he testified, ended his association with Hodge. In his argument to the jury, counsel for the government stated that Moore, on July 30, 1933, wrote Hodge a letter saying that he was no longer interested in the property. Counsel for appellant objected to this argument, but the District Court declined to interfere. This action of the court was excepted to and is assigned as error.

■ The ground of appellants' objection was that the letter in question had been withdrawn or excluded and was not in evidence. This is not borne out by the record. The bill of exceptions states that the letter was admitted in evidence as Government's Exhibit 33. Elsewhere in the bill it is stated that the jury were instructed to "disregard testimony involving Exhibit 33," but not that the exhibit itself was withdrawn or excluded. It is not claimed that counsel for the government misquoted the letter. Even assuming that the letter was not in evidence, we fail to see, and appellants have failed to show us, how they could have been prejudiced by this reference to it. The statement said to have been made in the letter added nothing to what the writer of the letter had said in his oral testimony, namely, that he had terminated his relations with Hodge, which statement necessarily signified that he was no longer interested in the property.

Appellant Hodge offered in evidence a copy of a publication called "Mining Truth" which, without objection, was admitted as Defendants' Exhibit A-6-c. On the first page of this publication was an article entitled, "Mr. Bowen Comes Back for More," in which were reproduced two press dispatches, one entitled, "Millions Lost in Fake Mining Schemes, Declares Bowen," and the other entitled, "Mining Men Flay Bowen's Stand Regarding Stocks." The first dispatch attributed to C. H. Bowen, State Securities Division Supervisor, the statement that "Washington's a 'sucker' for $1,000,000 annually. * * * Gullible investors 'shell out' that amount each year to wildcat mining operators. The State has become a national hunting ground for those who can convince get-rich-quick addicts that they can invest their money in a 'valuable'

mine claim. Washington is the only State in the nation not affording protection for its citizens against fraudulent mining stocks." The other dispatch quoted a statement by the secretary of the Northwest Mining Association, sharply criticising Bowen's statement. The article itself indorsed and reiterated that criticism. In his argument to the jury, counsel for the government called attention to this article and read therefrom the Bowen statement, as quoted above, and said to the jury, "That is the reason the United States Government steps in, in a case of this kind." Counsel for appellants objected to this argument and moved the court to instruct the jury to disregard it, which motion the court denied. The denial of the motion was excepted to and is assigned as error.

The ground of the motion and exception was that the article in question was not in evidence; that Exhibit A-6-c was introduced for the purpose of showing another article on another page thereof, and not for all purposes. This is not borne out by the record. The record shows that the entire exhibit was offered and admitted, without restriction or limitation. It further shows that the jury were permitted to take with them to the jury room all the exhibits in the case, including Exhibit A-6-c in its entirety, and that no objection was made thereto. Appellant could not have been prejudiced by the conduct of government counsel in reading to the jury a statement which the jury were subsequently permitted, without objection, to read for themselves.

■ Appellants assign as error the giving of an instruction to the jury that "The law presumes that a man intends the natural and legitimate consequences of his own acts, and an intent may be presumed, if unlawful acts have been established as charged, and it is shown that such acts were a part of the plan and intended to carry forward the scheme to defraud, charged in the indictment." This instruction was not excepted to. Counsel for appellants, in excepting to the court's charge, stated that "We except to that portion of your Honor's instruction which said, without more explanation, there is a presumption of law a man is responsible for the ordinary consequence of his acts." The court had, in fact, made no such statement. An exception to an instruction which the court never gave does not warrant a review of an instruction actually given, but not excepted to.

Appellants assign as error the giving of the following instruction to the jury: "You appreciate that if the Congress, the lawmaking body, makes a law with relation to a particular policy or rule of conduct, it believes it to be to the best interest and welfare of the country, and if people should decline to fairly and honestly live up to the law, or if public officials failed in the discharge of their duty by enforcing the law (and you are public officials), then it would only be a short time until a condition of anarchy would obtain, and no stable Government could be maintained. * * * You will appreciate Congress has passed the law with the purpose of having it enforced; that it is a very important law, passed for the protection of the public against schemes to despoil and defraud and to prevent the postal service from being used as an agency, and it is the duty of all public officials concerned with its enforcement, of whom you are a part, to proceed fearlessly, permitting neither prejudice nor sympathy to interfere."

■ The only thing in the record which could be regarded as an exception to this instruction was the statement by appellants' counsel that "The defendants also except * * * as to your Honor stressing the point of an important duty in the passage by Congress and a duty for all officers, including this jury, to enforce it and keep the Post Office Department free, stressing the fact in the case and pointing it out as an unreasonable condition, and misstating the function of the jury." This is unintelligible and meaningless. It does not state distinctly any matter of law in the instruction to which appellants except, as required by our rule 10, and, for that reason, the assignment of error predicated thereon is disregarded.

■ Appellants assign as error the giving of an instruction that "It is not necessary that all the misrepresentations alleged in the indictment be proved, but at least some of them must be proved, as charged, to your satisfaction and beyond a reasonable doubt." This was a correct statement of the law. Havener v. United States (C. C. A.) 49 F.(2d) 196, 199; Kaplan v. United States (C. C. A.)

18 F.(2d) 939, 943; Mathews v. United States (C. C. A.) 15 F.(2d) 139, 144; Myers v. United States (C. C. A.) 223 F. 919, 925.

■ Appellants assign as error the giving of the following instruction: "Belief in the advance of the selling price of the stock, alone, is not sufficient to support good faith when the selling price is based upon studied acts and conduct of the defendants to enhance the price of the stock by the creation of an atmosphere inspiring fictitious values for the purpose of inducing people to purchase stock which plainly would not otherwise be made, by knowingly making representations of sales on the stock exchange at advanced prices when such prices were fixed by the defendants and not upon intrinsic worth or discovered value in the mine or belief of new discoveries in the mine." This was a correct statement of the law [Harris v. United States (C. C. A.) 48 F.(2d) 771, 781], and was amply warranted by the evidence in this case. The evidence establishes that the stock here in question was worthless, and that its selling price was fixed by the defendants and based, not upon worth or value, actual or prospective, but upon "studied acts and conduct of the defendants," such as are described in the instruction.

■ Appellants assign as error the giving of the following instruction: "Where an unlawful object is sought to be effected and two or more persons actuated by a common purpose, pursuing a preconceived plan to accomplish that purpose, act or work together, in any manner, in furtherance of the unlawful scheme, each party consciously participating is a party to the conspiracy no matter what part he takes in the execution of the object or plan. And where several persons are proven to have combined together for the same illegal purpose, any act done by one of the parties in furtherance · of the original concerted plan and with reference to the common object' is, in the contemplation of law, the act of all of the parties. And likewise, when a conspiracy has been established, every one of the conspirators is bound by the declarations of the co-conspirators; the act of one, or the statement of one, is the statement or act of all of the persons who are members of the conspiracy." The assignment misstates the instruction by quoting only the last sentence of it.

It is thereupon argued that the instruction was erroneous, "as failing to limit the statements or acts for which conspirators are liable to the acts and statements done and made in furtherance of the conspiracy." A reading of the instruction, as actually given, shows that there was no such failure and no basis whatever for this assignment of error.

■ Appellants assign as error the giving of the following instruction: "You may consider that the indictment alleges in almost all instances the prospective investors were first solicited to purchase General Motors or other well known stocks listed on the New York Stock Exchange, and a large number of such subscriptions exchanged for Western States Gold Properties Corporation stock. You may also consider the alleged representations made, if you find they were made, that Maxwell · Gates & Company was a well established and responsible brokerage house engaged in a 'general brokerage business, and it is for you to determine whether for the purpose of trickery or deception or with honest intent to serve the investors." The first sentence of this instruction is a proper and correct statement of one of the allegations of the indictment. It does not, as argued by appellants, imply "that the indictment is evidence of itself." The last sentence is one of many wherein the jury's attention was properly directed to the several questions of fact to be considered and determined by them. The instruction does not, as argued by appellants, place "undue emphasis on portions of the evidence," nor is it in any way "misleading." These objections are groundless and frivolous.

■ Five assignments of error relate to the alleged refusal of · the District Court to give certain instructions which are set out in the assignments and are said to have been requested by appellant Brown. These instructions are not set out in the bill of exceptions. There is nothing to indicate that the District Court ever saw them or was ever asked to give them to the jury. We cannot assume that such a request was made and refused.

Two other assignments relate to · the alleged refusal of the District Court to give two instructions which are set out in these assignments and therein referred to as No. 5 and No. 16. These are said to have been requested by · appellant

Hodge. The bill of exceptions shows that, after excepting to certain portions of the charge as given, appellants excepted to the court's failure to give certain instructions said to have been requested by appellants, which, however, they did not then state, but referred to by number only. Two of these were referred to as No. 5 and No. 16. The bill further shows that, after these exceptions had been taken, the jury retired and the court adjourned. Elsewhere in the bill appears a copy of a document entitled "Requested Instructions of Defendant J. L. Hodge," which reads: "Comes now J. L. Hodge, one of the defendants herein, and respectfully requests this Honorable Court to instruct the jury herein as hereinafter proposed." Attached thereto are 17 sheets of paper, each of which sets forth a proposed instruction labeled, "Requested Instruction No. —." Among these are No. 5 and No. 16. There is, however, nothing to indicate that this document was ever filed or brought to the attention of the District Court. The bill nowhere states that the proposed instructions were presented to the court, or that the court was asked to give them. Error cannot be predicated upon the court's failure to comply with a request, which so far as the record shows, was never made.

Judgment affirmed.