## SHORES v. UNITED STATES.
### No. 7725.

Circuit Court of Appeals, Ninth Circuit.
Dec. 20, 1935.

Rehearing Denied Jan. 27, 1936.

DENMAN, Circuit Judge, dissenting.

———◇———

Robert H. Wallis and R. E. Parsons, both of Los Angeles, Cal., for appellant.

Peirson M. Hall, U. S. Atty., and Leo V. Silverstein, Jack L. Powell, and Hugh L. Dickson, Asst. U. S. Attys., all of Los Angeles, Cal., for the United States.

Before WILBUR, DENMAN, and MATHEWS, Circuit Judges.

WILBUR, Circuit Judge.

This appeal is from a judgment entered upon the conviction of appellant on eighteen counts of an indictment charging him with using the mails to defraud and one count charging conspiracy to do so. He was sentenced on each count, sentences to run concurrently, a total of two years. Upon this appeal he assigns two errors: First, that the court erred in overruling his objections to the introduction of letters and pamphlets covered by the counts for mailing on the ground that such letters and pamphlets were not shown to have been mailed by appellant or under his authority; and, second, that the court erred in denying his application for a continuance.

As to the first assignment, it is sufficient to point out that the sentence on the conspiracy count was for two years, and, consequently, error upon the other counts was immaterial, as the sentences were less than and were to run concurrently with the sentence on the conspiracy count. Furthermore, the claim that the appellant had severed his connection with the conspiracy before these letters and pamphlets were mailed was based upon the testimony of a codefendant which hardly goes so far and which the jury may well have disbelieved.

The second assignment with reference to the denial of the appellant's request for a continuance upon the ground that his attorney had been suddenly taken ill and was unable to conduct his defense presents some peculiar features which are not explained in the record. When the case was called for trial, two defendants, George Keller and John Keller, were represented by attorney Ohannesian. Attorney Wallis was added by substitution before the trial began. Gus Shores was represented by Attorney D. G. Taylor. The appellant, Howard Shores, presented his affidavit for continuance, copy of which is set out in the footnote,[1] and also presented an affidavit of a physician as to the condition of the

---

[1] "State of California, County of Los Angeles—ss.:

"Howard Shores being first duly sworn upon oath, deposes and says: That he is one of the defendants above named and in the above entitled action; that said matter is set for trial for February 6th, 1934.

"That prior to the arrest of your affiant, your affiant was advised that a warrant was outstanding for him in connection with this matter and he consulted with one R. E. Parsons, an attorney at law duly licensed to practice before the above entitled court and affiant verily believes that he fully and fairly stated his case in this matter and that he fully and fairly stated all of the facts in said case to the said attorney and affiant was advised by said attorney that in his opinion affiant had a good and meritorious defense to the above entitled matter. That affiant surrendered to the authorities in this matter and posted bail and from time to time since so doing affiant has consulted with the said R. E. Parsons with reference to the trial of this matter and the said R. E. Parsons is fully advised with reference to this matter and with the defense thereto to be interposed by your affiant and that the said R. E. Parsons will appear and conduct the defense of your affiant when he is physically able to do so.

"That this matter has been pending before the court for some time and affiant is reluctant to ask for a continuance of the trial of this matter but he must do so for the reason that his attorney R. E. Parsons is physically unable to appear and represent affiant at the trial of this cause. That the said R. E. Parsons has for some

attorney to the effect that R. E. Parsons, an attorney, was ill by reason of a nervous breakdown; that he could not participate in the trial without endangering his life; and that he would be unable to return to his office for at least two weeks. No prophecy was ventured as to when he would be able to appear in court and conduct the appellant's defense. It is clear that the court was justified in not awaiting the uncertain event of the recovery of the attorney who was ill. A motion for a continuance is addressed to the discretion of the trial court, and unless that discretion is abused, there is no error in the ruling thereon. Rachmil v. U. S. (C.C.A.) 288 F. 782; Crono v. U. S. (C.C.A.) 59 F.(2d) 339.

In the consideration of the question of whether or not there was an abuse of discretion in denying the appellant's application for a continuance, it is proper to consider the nature of the charge and of the evidence presented to sustain it and the nature of the proposed defense, if any, as well as the knowledge and ability of the appellant and his counsel.

The scheme to defraud alleged in the indictment was one to organize the International Securities Company to sell stock in the Ford Motor Company of Berlin by fraudulent representations and without any intention to deliver such stock, and later to placate the defrauded victims by offering to exchange stock in another corporation organized by the defendants, the United States Foreign Securities Company, for the undelivered stock of the Ford Motor Company of Berlin, this offer to be accompanied by other fraudulent representations concerning this latter corporation. Some of the witnesses for the prosecution were former employees of the defendants who had conducted the business under the direction of the defendants, and prepared, signed and mailed the form letters and pamphlets containing the fraudulent representations which are set out in the specific counts charging the mailing of matter in pursuance of the scheme to defraud. Howard Shores' connection with the matter was testified to by Bently with whom he arranged to use the name International Securities Company, and also by the clerks he had employed. It appeared that he had signed a statement for the bank, carrying the accounts of the International Securities Company, stating that he was the sole owner thereof; that he had represented that company in hearings before the State Corporation Commissioner and had signed numerous applications on its behalf for brokers' licenses. The printed matter mailed by the defendants showed beyond doubt the fraudulent character of the. scheme. The connection of Howard Shores with it was established beyond question by the evidence adduced by the government. The cross-examination of the witnesses was conducted by either Ohannesian or Wallis, attorneys for the two Kellers. Numerous victims testified to the receipt of letters from the defendants, their payment of money to the defendants and their failure to receive any

ten (10) days attempted to get himself into such physical condition as would permit him to appear and represent affiant at the trial of said cause but this the said attorney has been unable to do and on Saturday last, February 3, 1934, said R. E. Parsons was required to leave town and is under a doctor's care and is unable to appear at the trial of this cause on February 6, 1934. That your affiant has been advised that for the said attorney to appear and represent your affiant at the trial of this cause would seriously endanger the life of said attorney. That said attorney is under the care and attention of Dr. Benjamin Blank, a physician and surgeon duly licensed to practice his profession in the state of California.

"That affiant has no money or means with which to procure other counsel, nor can he secure other attorneys, for affiant has made an effort in the last few days through friends and others to procure the services of another attorney to represent affiant at the trial of this cause but this he has been unable to do.

"That affiant does not make this affidavit for the purpose of unnecessary delay nor to unnecessarily delay the trial of this matter but for the reasons above stated and for the reason that affiant feels that he cannot safely proceed to trial in the above cause without the presence of R. E. Parsons to represent him.

"Wherefore affiant respectfully prays that this matter be continued for such period of time as will meet the court's calendar, and will permit his said attorney to regain his health to a point where he can appear and represent affiant or until affiant can procure other counsel.

"Howard Shores,

"Subscribed and sworn to before me this 6th day of February, 1934.

"W. T. Hopkins,

"Notary Public in and for the County of Los Angeles, State of California."

stock as promised. To answer this array of witnesses and documentary evidence, George L. Keller, a codefendant, took the stand. No other evidence was offered. Keller testified that Howard Shores, Buckley, and himself were equal partners in the scheme to sell the stock of the Ford Motor Company of Berlin for $100 per share; that the market value of this stock was never more than $24 per share. He also testified that Bently, the government witness, was a partner; that they paid $16 per share commission to their brokers for selling the stock of the Ford Motor Company of Berlin; that Buckley, one of the partners, was to procure the stock for $74 a share from his brother who was connected with a brokerage company in New York handling the stock, although why they were to pay three times the market price is not explained; that Buckley took between $20,000 and $30,000 of the partners' money and only delivered three shares of the stock; that he was a drunkard and finally committed suicide. The witness testified that he got nothing out of the deal and had invested and lost all his money in it in an attempt to make good; that only about 10 per cent. of their customers remained unsatisfied and that the balance represented about the amount Buckley had misappropriated. He it was who testified that Howard Shores had nothing to do with the matter after the International Securities Company had transferred all its liabilities and assets (the latter consisting largely of office furniture and supplies) to the United States Foreign Securities Company.

This is hardly a meritorious defense. There was a variance in that the fraud testified to by the codefendant was one to actually sell and deliver a share of stock worth $24 for each $100 secured from the victim, but in view of the failure to acquire the stock or to make any reasonable arrangement to do so, the jury was justified in finding that there was no intention to deliver the stock. In view of the abundant testimony as to the connection of Howard Shores with the fraudulent scheme, we are left wholly in the dark as to the defense he sought to interpose through attorney Parsons, nor is it disclosed in the briefs by such attorney who now represents him on this appeal. The defense was not disclosed in the application for a new trial, nor is it suggested by hypothesis or otherwise how or why the appellant was prejudiced by the denial of the motion for a continuance.

It remains to consider whether the court was justified in appointing attorney Taylor who represented the codefendant, Gus Shores, and in requiring him to proceed with the trial.

The right to the assistance of counsel is constitutional, but it is entirely immaterial whether it is constitutional or statutory. If the appellant's right to have the assistance of counsel has been violated and he has been prejudiced thereby, the judgment should be reversed. In this connection it should be observed that appellant relies principally upon the claim that he was deprived of the benefit of counsel during the period prior to the trial, or, rather, that he was denied the assistance of counsel who had been in charge of his case during that period. This is, of course, in effect a claim that the court was bound to give him an opportunity to be represented at the trial by the attorney who had represented him during the long period prior to the trial. No case upholds this doctrine. Appellant states:

"All of the transactions on which the indictments were founded took place between August 1, 1929, and August 1st, 1930, a period between three and one-half and four and one-half years prior to the date of trial, a circumstance requiring assiduous investigation by any counsel for the appellant, and certainly demanding frequent opportunity of consultation between appellant and his counsel prior to trial. How else, we ask, could counsel fairly recognize the threads of evidence ascertainable only from all the recollections of the appellant of facts occurring as long as four and one-half years before the date of trial, which constituted the defense of appellant, than by frequent painstaking consultations before trial?

"It is submitted that the authorities herein considered are conclusive and unanswerable on the proposition that the denial by the trial court in the case at bar of a continuance or postponement on the ground of the illness of appellant's counsel, effectively deprived appellant of a fundamental constitutional right, namely, the right to assistance of counsel for his defense. The appointment of counsel by the trial court upon the trial itself, without knowledge or preparation of the defense of appellant did not meet and could not

constitute the satisfaction of this constitutional guaranty."

It is fair to assume from this statement, and it would be a justifiable inference without it, that such consultations as the appellant states were necessary had in fact occurred between himself and Parsons, and that if Taylor was also his attorney, between himself and Taylor. It is also fair to assume that Taylor had made the same preparations for the trial of the case against Gus Shores. The other attorneys in the case representing the other defendants bore the burden of the examination and cross-examination of witnesses, and thus their preparation supplemented that of Taylor. The appellant assumes that he was incapable of communicating to Taylor the things he had learned from Parsons, assuming that Taylor was not his attorney and Parsons was, but this assumption is entirely inconsistent with the intelligence and experience of the appellant.

In his claim that he has been denied the "assistance of counsel for his defense" within the meaning of that phrase as used in the Sixth Amendment to the Constitution of the United States, appellant relies strongly upon the recent decision of the Supreme Court in Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 59, 77 L. Ed. 158, 84 A.L.R. 527, in which case the court was principally concerned with the question of whether or not the conduct of the trial court in relation to the employment of attorneys for the defendants therein was a violation of the Fourteenth Amendment to the Constitution. That decision also involved a consideration of the right of a defendant in a criminal case to have the assistance of counsel. In the case at bar we are concerned only with the constitutional right to the assistance of counsel guaranteed by the Sixth Amendment. We have only to consider the facts in Powell v. State of Alabama to disclose the contrast between the situations presented in the two cases. In the Powell Case the crime was committed on March 25, 1931, the indictment returned six days later, March 31st, and on the same day the defendants were arraigned and entered pleas of not guilty. The defendants were young negroes, "ignorant and illiterate," some of them under 21 years of age. They were threatened with mob violence, were protected by the militia, were kept at Godsden for safety, and brought to Scottsboro for arraignment and trial. The trial occurred in an atmosphere of tense, hostile, and excited public sentiment. All the defendants were residents of other states where alone members of their families or friends resided. On April 6th, six days after the indictment, the trial began. Apparently there had been no preparation for trial as no lawyer had accepted the responsibility of preparing the case for trial. The action of the trial court in "appointing all the members of the bar to represent the defendants" was said by the Supreme Court to be "little more than an expansive gesture, imposing no substantial or definite obligation upon any one." It was held that between the arraignment and trial the defendants did not have the aid of counsel. The court said: "In the light of the facts outlined in the fore part of this opinion—the ignorance and illiteracy of the defendants, their youth, the circumstances of public hostility, the imprisonment and the close surveillance of the defendants by the military forces, the fact that their friends and families were all in other states and communication with them necessarily difficult, and above all that they stood in deadly peril of their lives—we think the failure of the trial court to give them reasonable time and opportunity to secure counsel was a clear denial of due process.

"But passing that," the court said, "and assuming their inability, even if opportunity had been given, to employ counsel, as the trial court evidently did assume, we are of opinion that, under the circumstances just stated, the necessity of counsel was so vital and imperative that the failure of the trial court to make an effective appointment of counsel was likewise a denial of due process within the meaning of the Fourteenth Amendment. Whether this would be so in other criminal prosecutions, or under other circumstances, we need not determine. All that it is necessary now to decide, as we do decide, is that in a capital case, where the defendant is unable to employ counsel, and is incapable adequately of making his own defense because of ignorance, feeble-mindedness, illiteracy, or the like, it is the duty of the court, whether requested or not, to assign counsel for him as a necessary requisite of due process of law; and that duty is not discharged by an assignment at such a time or under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case. * * *

In a case such as this, whatever may be the rule in other cases, the right to have counsel appointed, when necessary, is a logical corollary from the constitutional right to be heard by counsel."

In the case at bar, we have the following distinctions: First, the appellant was not ignorant or illiterate. He was a shrewd man engaged in separating people of ordinary intelligence from their property by means of his understanding of human psychology and a willingness to play upon that knowledge without scruple. He was engaged in an enterprise with other defendants who were likewise shrewd and unscrupulous men of affairs. Second, there were no circumstances of public hostility. Third, appellant had been released on bail and is still at liberty on bail. Fourth, appellant had been living for some time at the place where he was tried. Fifth, he was not in deadly peril of his life. The case was not a capital one. Sixth, according to his own affidavit, appellant was able to employ an attorney who had represented him for at least two years. Seventh, the indictment was filed October 28, 1931; appellant was arraigned March 7, 1932, and the trial of the case was begun February 6, 1934, and continued until February 15, 1934, when a verdict was returned. During this period we may asume from the appellant's affidavit as to such employment that he had been advised by counsel not only as to his rights in the

premises, but also as to the defense he intended to interpose upon the trial and as to the witnesses it would be necessary to present that defense, so that there was no deprivation of the right of the appellant to consult counsel as to his rights and to prepare for the trial. The complaint of counsel narrows down to the requirement of the court that the trial proceed notwithstanding the illness of Mr. Parsons. As hereinbefore pointed out, there is no statement in the affidavit of Shores that attorney Taylor had not represented him during the period the case had been pending. The failure of appellant to aver in his affidavit that Parsons was his only attorney, or that he was the only one on which he had relied to represent him at the trial, and that Parsons had been employed by him, is accentuated by what transpired in court at the time the appellant presented his affidavit and application for a continuance. It is true that no affidavits were filed countervailing the affidavit of appellant. It is also true that the clerk of the court stated that the record did not show that Taylor had appeared for the appellant. We may assume that the record would confirm the statement of the clerk. But this was a mere statement of a negative proposition. On the other hand, we have the statement of Taylor made in the presence of the appellant, which we have quoted in the footnote.[2] When the court asked if he was still on the record and Mr. Taylor replied,

---

[2] "The Court: Whom are you representing, Mr. Ohannesian?

"Mr. Ohannesian: Mr. Keller; the two brothers.

"The Court: And Gus Shores is represented by whom?

"Mr. Taylor: I represent him. And there *was* a substitution as to Howard Shores.

"The Court: There will be a substitution as to Howard Shores?

"Mr. Taylor: Yes, your Honor.

"The Court: You will be substituted in or out?

"Mr. Taylor: I will be substituted out.

"The Court: *I am not going to let you be substituted out. There will be no continuance of this case.*

"Is the Government prepared to go ahead without the presence of Howard Shores?

"Mr. Taylor: He is here, your Honor.

"The Court: I mean without proceeding against him.

"Mr. Powell: No, your Honor. He is one of the principal defendants, and we will have to try the case twice.

"The Court: Mr. Taylor is still on the record?

"Mr. Taylor: I think so.

"The Court: What does the record show, Mr. Hansen?

"The Clerk: The record only shows Mr. Taylor's appearance for Gus Shores.

"The Court: Well, this man appears to have a nervous breakdown. We didn't know anything about this before, gentlemen.

"Mr. Taylor: Never heard of it before now, your Honor.

"Defendant Howard Shores: Just happened Saturday.

"The Court: Proceed. You will act as counsel, Mr. Taylor. Call the jury.

"Mr. Ohannesian: If the court will bear with me, may the record show Robert Wallis as associate of counsel for the two Kellers?

"The Court: The record may so show.

"There has been no substitution of a lawyer named Parsons on the record?

"The Clerk: Not to my knowledge.

"The Court: Proceed."

"I think so," he in effect stated that he was and had been the attorney for Howard Shores. In view of the colloquy, his statement could have no other significance. It is true this statement is not under oath, but Mr. Taylor was an officer of the court, and his statement was made in that capacity and in the presence of the appellant who did not deny it, nor did he object to being represented by Taylor. The statement of an attorney that he represents a party in court is prima facie evidence of his authority so to do, and this fact must be considered when the court is called upon to balance the statement of the clerk that the record showed no appearance by Taylor on behalf of the appellant and Taylor's statement that he had represented the appellant up to the time of trial. See Pekin Stave & Mfg. Co. v. Ramey, 104 Ark. 1, 147 S.W. 83; 6 C.J. 631, § 128.

If· we were dealing with a situation where the trial court, on the day of the trial, had appointed an attorney who was wholly unfamiliar with the case and entirely unprepared to represent the appellant, the situation would be entirely different, as we have pointed out. A consideration of the cases cited by the Supreme Court in Powell v. State of Alabama, 287 U.S. 45, on page 70, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527, in support of the proposition that "the state decisions which refer to the matter invariably recognize the right to the aid of counsel as fundamental in character," will show that in every case the trial was almost immediately after the commission of the offense; that in most instances there was great public hostility to the defendant evidenced in some of the cases by an attempt to mob him and that the offense for which he was indicted was punishable by death, and that counsel who were appointed requested a continuance of the trial because of inability to prepare therefor, which request was denied by the trial court. We have none of these elements in the case at bar.

In Crouch v. U. S., 298 F. 437, 440, Circuit Judge Mack, speaking for the Circuit Court of Appeals for the Sixth Circuit in a somewhat similar case, stated: "No application for a continuance was made until the case was actually called, when defendant advised the court that his counsel was engaged in another court and asked for a continuance. The court below did not believe a continuance justified. The defendant in fact was represented by counsel, although rather hastily chosen. There appeared, however, to be no real dispute as to the facts. There is no contention now that the record is not adequate or complete. The result would not rightly have been different, had counsel originally retained conducted the defense. So far as any questions of law were involved, the defendant's rights were safeguarded by exception duly taken. In the circumstances, we cannot hold that any constitutional right of the defendant was infringed, or find any abuse of discretion by the trial court."

It does not appear that the result would have been any different had the attorney of appellant's choosing conducted his defense, or that the attorney appointed by the court was unable to conduct his defense properly as a result of the denial of the continuance. Considering all of the circumstances of this case we see no abuse of discretion by the trial court. See also, Crono v. U. S. (C.C.A.9) 59 F.(2d) 339; People v. Saenz, 50 Cal.App. 382, 195 P. 442.

Judgment affirmed.

MATHEWS, Circuit Judge (concurring).·

Appellant filed in the court below seven assignments of error, of which he has in this court abandoned all but two. He says in his brief: "It is not proposed in this brief to urge all of the errors assigned, but only the assignments designated IV and VI in the assignment of errors."

Assignment IV is "That the court erred in overruling the defendant's objections to the introduction of letters and pamphlets, on the ground that such letters, pamphlets and communications were not shown to have been mailed by the defendant or under his authority." This assignment does not quote the full substance of the evidence objected to, as required by our Rule 11, and, for that reason, should be disregarded. Levine v. United States (C.C.A. 9) 79 F.(2d) 364, 367.

Assignment VI is "That the court erred in denying defendant's motion for a postponement of the trial of said matter · in the absence of defendant's counsel." The ruling complained of was not excepted to. This assignment, therefore, should be disregarded. Levine v. United States, 79 F. (2d) 364, 369.

There is nothing else in the case. The much-discussed action of the trial court in

appointing counsel for appellant was not excepted to, was not assigned as error, and is not before us for review.

The judgment should be affirmed.

Memorandum on facts by DENMAN, Circuit Judge.

It is but fair to the penniless appellant that there should not be an omission of pertinent facts from the summary of the opinions here. The exercise of his right to seek certiorari is necessarily dependent on such a clear and full statement of the facts.

The record shows in addition to the short extract in footnote 2 of the majority opinion, the following:

(a) Appellant's plea *at arraignment* in *propria persona,* while Attorney Taylor there appeared for another defendant.

(b) The absence of any counsel of record on the morning of the trial twenty-three months later.

(c) That the jury was impaneled when appellant was without counsel.

"At a stated term, to-wit: * * * on Monday, the 7th day of March, 1932. * * *

"This cause coming on for *arraignment* and *plea* of defendant *Howard Shores* and for entry of plea of defendant Gus Shores; Gwyn Redwine, Assistant United States Attorney, appearing for the Government, *defendant Howard Shores being present in propria persona* and defendant Gus Shores being present with H. M. Daugherty, Esq., who has been appointed as counsel for said defendant Gus Shores, and for whom *D. G. Taylor, Esq., who is present,* has been substituted; *defendant Howard Shores waives reading of the Indictment, states his true name to be as given therein; and, upon being required to plead, the defendant enters his plea of not guilty.*" (Page B. Addition to record ordered by way of diminution.)

The following from pages 91 and 92 of the record, preceding the introduction of the affidavits in footnote 2 of the majority opinion, shows (b) appellant still without counsel at that time, and (c) that the jury was impaneled when the appellant was without counsel.

"Be it Remembered that this cause came on regularly for trial on the 6th day of February, 1934, before the Honorable Paul J. McCormick, Judge of said Court, *and a jury therein being duly empaneled and sworn to try said cause;* Jack Powell, Esq., assistant to the United States Attorney, appearing as attorney for the plaintiff; *D. G. Taylor, Esq., appearing as the attorney for* defendant *Gus Shores;* J. George Ohannesian and Robert H. Wallis, Esqs., appearing as attorneys for defendants George Lourie Keller and John L. Keller.

"Wherefore: The trial of said cause proceeded and the following proceedings were had, and testimony, oral and documentary was offered by the respective parties and admitted by the Court, as follows:

"The Clerk: No. 10,639-M, Criminal; United States versus Howard Shores, George Lourie Keller, John L. Keller and Gus Shores, for trial.

"By Mr. Powell: Ready your Honor.

"By Mr. Taylor: Ready for *Gus Shores,* your Honor.

"By Mr. Powell: Mr. Ohannesian is out in the hall, your Honor, representing the Kellers.

"By the Court: What about the defendant Howard Shores?

"By Defendant, Howard Shores: *My* counsel had a breakdown and was sent away. I have an affidavit here."

The record showing Mr. Taylor was not appellant's attorney and appellant's statement that Mr. Parsons is "my counsel," it is submitted, should have been considered in Judge Wilbur's opinion, not as corroboration of the clerk's advice to the court that "The record only shows Mr. Taylor's appearance for Gus Shores," but as positive and conclusive evidence of the ultimate fact as to its condition.

These record facts, as well as the clerk's unsworn statement, should be considered in connection with Attorney Taylor's equally unsworn statement, first, "there *was* a substitution as to Howard Shores" and his later statement, not of the fact but of his impression, that *"I think"* I am "still on the record." Since Taylor was *not* on the record and he said there *"was"* a substitution, and since Mr. Parsons was *"my* [appellant's] *counsel,"* Taylor had no authority to give testimony against him even if a *former* client. It is a denial of the right of sworn cross-examination. All attorneys are officers of the court, but this gives them no right to speak for parties for whom they are not counsel, or to testify about them if not sworn as witnesses.

The record further shows that twenty-three crimes were charged in an indictment printed in fifty-seven pages of the record, describing intricate and wide spread transactions over a year's time and in cities *five hundred miles apart*. If afterwisdom be relevant to the judge's prior action in imposing counsel, the record shows the trial occupied ten days; thirty-six witnesses were examined; and one hundred sixty-seven exhibits offered or introduced. Obviously a case where a layman, however intelligent, must have counsel, and one, even if of considerable experience, who is allowed the requisite time for investigation and preparation.

The arbitrary character of the court's denial of appellant's right to proper counsel is apparent from the following:

1. Appellant had no counsel of record.

2. No prior continuance was requested or obtained by appellant.

3. On the filing of his affidavits and motion, appellant stated *"my* counsel [Parsons] had a breakdown," etc.

4. Affidavits of appellant and Attorney Parsons' physician show (a) Parsons appellant's counsel for twenty-three months, from arraignment to two days (one Sunday) before trial, when illness prevented his appearance; and (b) appellant's diligence in efforts to obtain counsel in the two intervening days and his failure to obtain one.

5. No counter affidavits. No examination of the physician on his affidavit. No examination of appellant.

6. No opposition to continuance by prosecution.

Then immediately follows:

"The Court: Whom are you representing, Mr. Ohannesian?

"Mr. Ohannesian: Mr. Keller; the two brothers.

"The Court: And Gus Shores is represented by whom?

"Mr. Taylor: I represent him. And there *was* a substitution as to Howard Shores.

"The Court: There will be a substitution as to Howard Shores?

"Mr. Taylor: Yes, your Honor.

"The Court: You will be substituted in or out?

"Mr. Taylor: I will be substituted out.

"The Court: *I am not going to let you be substituted out. There will be no continuance of this case. * * **

"The Court: Mr. Taylor is still on the record?

"Mr. Taylor: I *think* so.

"The Court: What does the *record* show, Mr. Hansen?

"The Clerk: The record only shows Mr. Taylor's appearance for Gus Shores.

"The Court: Well, this man appears to have a nervous breakdown. We didn't know anything about this before gentlemen.

"Mr. Taylor: Never heard of it before now, your Honor.

"Defendant Howard Shores: Just happened Saturday.

"The Court: Proceed. *You will act as counsel, Mr. Taylor.* Call the jury."

7. No examination of the record itself.

8. No examination of appellant on the following *obvious likelihoods*:

a. Was Taylor unprepared to defend a "principal defendant" in the twenty-three crimes charged against him, stated in the fifty-seven pages of the indictment, and covering over a year's time and intricate and extensive transactions in various cities five hundred miles apart?

b. Was the defense of Gus Shores in any way *inconsistent* with that of appellant, when apparent that such defense might properly be, "True, Howard Shores may have done all these wicked things, but my client, Gus Shores, had no criminal participancy in them"? From the record of the trial, it is inferable that this is just what Taylor did.

c. Was there lack of *personal* harmony between Taylor's two clients—charged co-conspirators—making a co-operative defense impossible?

d. Assuming Taylor's unsworn statement admissible, was his substitution because appellant realized him not competent to handle the complicated case, or because their personal relations made his representation improper?

If any of these likely conditions existed, it is obvious that *some* continuance was necessary. Yet the hearing on the issue of appellant's constitutional right to counsel begins with the court's statement "There will be *no* continuance in this case."

When a federal judge, after impaneling a jury to try a man without counsel, makes such an arbitrary ruling, it is of no significance that an accused man makes no protest. This is true whether the arraignment was but a week before trial or the accused is under the demoralizing strain of indictment for the twenty-three months of delay in bringing him to trial.

Judge WILBUR'S opinion, in effect, disagrees with Judge MATHEWS that the absence of an exception, in the unusual circumstances of this case, deprives the accused man of the right to have the constitutional question or the claim of abuse of discretion considered by this court.

DENMAN, Circuit Judge (dissenting).

"Thére will be no continuance in this case," was the trial judge's arbitrary and precluding statement without any inquiry of the appointee's fitness or of his possible acceptance by appellant as counsel of his choice. Such a predisposition of an issue of constitutional right tendered by the uncontradicted affidavits in a motion which is unopposed by the prosecution transcends a mere question of discretion. Though the paramount fact in the case, the precluding effect of this ruling is not discussed in Judge WILBUR'S opinion, much less that it began the hearing on the issue and shut off all protest.

Even if the record did not thus clearly show the denial of the constitutional right, I cannot concur in the statement of the principles relied upon for the determination of the issue presenting the claim to the right.

Primarily, therefore, I dissent from the statement of the ground of appellant's appeal in the first paragraph of that opinion. In its essence the ground is not "that the court erred in denying his application for a continuance." It is that the court *deprived appellant of his constitutional right* to a "fair opportunity to secure counsel of his own choice"' and his "corollary" right to a prepared counsel, as held in Powell v. State of Alabama, 287 U.S. 45, 53, 72, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527:

(a) In not granting deliberative time for determining whether the illness of the counsel of appellant's choice, who had continuously advised him during the twenty-three months from his indictment to two days before the long and complicated trial, warranted a continuance for his recovery or until other counsel had consulted with him. Having lost the counsel advising him "during perhaps the most critical period" between "arraignment and trial," appellant was as if he never had him.

"In any event, the circumstance lends emphasis to the conclusion that during perhaps the most critical period of the proceedings against these defendants, that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thorough-going investigation and preparation were vitally important, the defendants did not have the aid of counsel in any real sense, although they were as much entitled to such aid during that period as at the trial itself. People ex rel. Burgess v. Risley, 66 How.Prac. (N.Y.) 67; Batchelor v. State, 189 Ind. 69, 76, 125 N.E. 773." Powell v. State of Alabama, supra, 287 U.S. 45, 57, 53 S.Ct. 55, 59, 77 L.Ed. 158, 84 A.L.R. 527.

(b) In arbitrarily forcing upon appellant for *instant trial,* without inquiry, and *precluding inquiry by ruling that the trial would not be continued in any event,* the counsel for a charged coconspirator, whose statements, if admissible, show that appellant chose *not* to have him, and, though I believe it irrelevant, who, demonstrably from the trial record, was incapable of properly representing and did improperly represent him; and

(c) In failing to ask appellant whether the counsel so imposed on him was one in his possible range of choice and whether, having lost his long prepared counsel, he could, instanter, be tried without assembling again the law and evidence for his defense.

"The prompt disposition of criminal cases is to be commended and encouraged. But in reaching that result a defendant, *charged with a serious crime, must not be stripped of his right to have sufficient time to advise with counsel and prepare his defense.* To do that is not to proceed promptly in the calm spirit of regulated justice but to go forward with the haste of the mob." Powell v. State of Alabama, supra, 287 U.S. 45, 59, 53 S.Ct. 55, 60, 77 L.Ed. 158, 84 A.L.R. 527.

I cannot concur with the conclusion of Judge WILBUR'S opinion that the constitutional right to counsel, as analyzed in Powell v. State of Alabama, is not as much the right of an intelligent white man, accused of any serious crime, as it is of a negro accused of a capital offense. The essence of the right is not dependent

upon either the nature of the crime or the race or mental development of the citizen upon whom the Constitution has conferred it. Historically, the right was first created for crimes other than capital.

It is my opinion that, under Powell v. State of Alabama, where *in any case,* this *constitutional right is established as having been denied,* reversible error occurs. The granting of the right is in all cases paramount to any question of the convenience of the court or the condition of its calendar.

It is proper to state that this court knows of the then crowded condition of the calendar of the court below.' No better evidence is required than that this criminal trial was delayed for twenty-three months after indictment, when, two days before the case was called, the appellant found himself both penniless and with an incapacitated counsel. It is my belief that the record showing the arbitrary action of an able and conscientious judge, evidences the overstrain of an unceasing pressure of ever mounting litigation, rather than his deliberative action.

Proper deliberation in deciding the rare cases where, as here, this constitutional issue is definitely framed in an appropriate motion, will not cause any appreciable delay in the administration of justice. No doubt if, in this case, appellant had been consulted about his defense, the court could have found proper counsel without serious embarrassment to any one. However, even had serious embarrassment resulted, it would no more justify a deprivation of appellant's constitutional right than would the embarrassment of a state justify legislative reform which takes property without due process.

Powell v. State of Alabama, 287 U.S. 45, at pages 66 et seq., 53 S.Ct. 55, 77 L. Ed. 158, 84 A.L.R. 527, decides that the denial by a state court of "a fair opportunity to secure counsel" of the accused's choice, and the failure to secure his "corollary" right of a proper appointment by the court, is a denial of "due process" under the Fourteenth Amendment. It is, therefore, equally a denial of "due process" under the Fifth Amendment. Id., 287 U.S. 45, page 69, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527.

"It never has been doubted by this court, or any other so far as we know, that notice and hearing are preliminary steps essential to the passing of an enforceable judgment, and that they, together with a legally competent tribunal having jurisdiction of the case, constitute basic elements of the constitutional requirement of due process of law. * * *

"What, then, does a hearing include? Historically and in practice, in our own country at least, it has always included the right to the aid of counsel when desired and provided by the party asserting the right. The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. If charged with crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect. If in any case, civil or criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal *would be a denial of a hearing,* and, therefore, of *due process in the constitutional sense."* Powell v. State of Alabama, supra, 287 U.S. 45, 68, 69, 53 S. Ct. 55, 64, 77 L.Ed. 158, 84 A.L.R. 527.

As shown in the memorandum above, the twenty-three crimes charged required fifty-seven printed pages of the record for their statement; the trial occupied ten days in the examination of the thirty-six witnesses and offering and introduction of one hundred and sixty-seven documents. If in any case "an intelligent and educated layman" required counsel this is certainly one.

The uncontradicted affidavit of footnote 1, above, shows that appellant was without means to employ counsel, and that he had been unable to secure *gratuitous* counsel either through his friends or his own ef-

forts in the Sunday and Monday before the trial after sickness had taken from him the counsel who had advised him in the "most critical period" of the twenty-three months between "arraignment and trial." Since he was no more able than the Scottsboro boys to defend himself, propria persona, in such a mass of criminal charges on such complicated and extended evidence, and since, though not a capital offense, instead of one, there were charged twenty-three of the "serious offenses" the Powell Case says require the constitutional right of counsel, appellant was as much entitled as the Scottsboro defendants to the "corollary" constitutional right of a proper appointment by the court.

"In a case such as this, whatever may be the rule in other cases, the right to have counsel appointed, when necessary, is a logical corollary from the constitutional right to be heard by counsel." Powell v. State of Alabama, supra, 287 U.S. 45, 72, 53 S.Ct. 55, 65, 77 L.Ed. 158, 84 A.L.R. 527.

There is no more reason to sustain the action of a jury and court where the trial is conducted without due process, because the result imprisoning a supposedly wicked person is desirable, than that a state should take property without the due process of the Fourteenth Amendment because the property when taken is devoted to a desirable public purpose. The principle applied to property rights applies with equal force to human rights. If having counsel of one's choice or the "corollary" right of counsel properly prepared is a matter of due process, its deprivation invalidates the judicial result as much as if there had been a trial without a jury, fairly conducted by a judge, with abundant evidence to show the guilt of the accused.

I therefore dissent from the thesis of the majority that if the result would have been the same if appellant had had counsel of his choice, the judgment should be sustained. Incidentally, the record clearly shows that the result in all probability would have been quite different.

If Judge WILBUR'S view that the court's arbitrary action is to be justified by the jury's verdict that appellant was a "shrewd and unscrupulous man of affairs," so the Scottsboro jury's verdict that ap-

pellants had raped a helpless white woman would have justified the judge's arbitrary action in that case. The Supreme Court declined to apply such afterwisdom but held that in deciding the issue as to right to counsel, the presumption of innocence controlled.

"However guilty defendants, upon due inquiry, might prove to have been, they were, until convicted, presumed to be innocent." Powell v. State of Alabama, supra, 287 U.S. 45, 52, 53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527.[3]

I also dissent from the thesis that it is immaterial whether the denial of such counsel violates the constitutional right to due process or denies a mere statutory right concerning which the error may be deemed as not reversible because not affecting the justice of the result. The distinction is clear between denying due process and nonprejudicial error committed in procedure which denies no fundamental right conferred by the Constitution.

All the above requires dissent from the necessary inference arising from the interpretation Judge WILBUR places on the quotation from 287 U.S. 45, page 71, 53 S.Ct. 55, 65, of the opinion in the Powell Case. The inference is that the Supreme Court has decided no more than that where the defendants are ignorant and imprisoned negroes charged with a capital offense there *exists* a constitutional right to counsel, and that it must not be inferred that it *exists* in any other case. My interpretation of that quotation, in connection with the whole of the Powell opinion, is that in *every* case where a defendant is "charged with a serious crime" (287 U.S. 45, 59, 53 S.Ct. 55, 60) there *exists* the constitutional guarantee with the "corollary" right (287 U.S. 45, 72, 53 S.Ct. 55, 65) and that in denying the right due process is denied, but that in holding *it has been denied under the facts of the Powell Case* it is not creating the criterion of denial *on the facts of any other case.*

So much for what I regard the improper principles of law in trying such a constitutional issue established for this Circuit at least by Judge WILBUR'S opinion. Applying the criterion of afterwisdom it is apparent that the enforced attorney did not satisfy the requirements of the cited cases on which his opinion relies, and that

---

[3] The ruling is emphasized by the dissent (287 U.S. 73, 53 S.Ct. 66) which considered the subsequent trial record relevant in determining the propriety of denial.

the record does not show that the result would have been the same if appellant had had proper counsel. These cases, it will be noted, were decided before Powell v. State of Alabama, and none treats the denial of counsel as a denial of "due process."

The case quoted, to support the doctrine that, upon denial of the right to counsel, the trial record will be examined to determine if there was prejudice, states the situation there as follows: "There appeared, however, to be no *real dispute as to the facts*. There is no contention now that the record is not adequate or complete. The result would not rightly have been different, had counsel originally retained conducted the defense. So far as any questions of law were involved, *the defendant's rights were safeguarded by exception duly taken*. In the circumstances, we cannot hold that any constitutional right of the defendant was infringed, or find any abuse of discretion by the trial court." (Italics inserted.) Crouch v. U. S. (C.C.A.) 298 F. 437, 440.

In this case there is a "real dispute" as to the facts of appellant's participancy in the conspiracy. Here no "exceptions were duly taken" or at all by appellant's enforced counsel to the following: (a) The impaneling of the jury when appellant's sick counsel was not present and the record showed no counsel; (b) the denial by the court of a continuance within which the appellant could exercise his constitutional right.

All the facts were in "real dispute." The second paragraph of Judge WILBUR'S opinion itself states that the fact as to Shores' participancy in the conspiracy after *March 19, 1930,* constituted so "real" a "dispute" that the jury might have decided either way. That fact *determined whether nine guilty verdicts were justified.* Surely Judge Mack's opinion in the Crouch Case cannot justify Judge WILBUR'S opinion, even if the denial of the constitutional right were not a deprivation of due process.

It is in connection with the "real dispute" as to appellant's participancy in these nine crimes committed after March 19, 1930, that the gravest results appear from the appointment, without inquiry, of the counsel of a charged coconspirator. Appellant's defense was thrown to the winds to aid his counsel's first client.

Though Judge WILBUR'S opinion omits to state it in considering this part of appellant's contention, the prosecution's brief here does not deny that after the "March 19th" testified to by one of the defendants, appellant's connection with the conspiracy ceased. The prosecution's only claim here is that the date "March 19th" was stated without naming the year. The year is clearly established to be 1930 by the undisputed testimony that on April 1, 1930, a new company was formed in which appellant was "left out" and that in May *1930* the conspiring company had turned over the entire enterprise to the new company. None of the nine subsequent indictment letters was signed by appellant. They were signed by the new company. No connection between appellant and these nine letters was shown.

In this state of the record it is obvious that appellant's counsel should have moved for a directed verdict separately on each one of the charges based on the succeeding letters. The testimony concerning appellant's discontinuance in the conspiracy came as a part of defendants' case. At the close of the prosecution's case the attorney for the alleged coconspirator Gus Shores, so enforced on appellant by the court, had indicated the prejudicial inconsistency of his employment by the following motion for a directed verdict:

"By Mr. Taylor: Appearing for Howard Shores and Gus Shores, we ask for a directed verdict as to both of these defendants on the ground that there is no evidence so far introduced in this case to sustain a verdict, *particularly as to Gus Shores.*"

One can imagine the effect on the jury of the discrimination shown in the word "particularly" as distinguishing the one client from the other. In the continuation of the trial with the defendants' testimony as to the appellant being "left out" of the alleged conspiracy after March 19, 1930, the first motion for a directed verdict fell. A new motion was necessary to protect appellant with reference to possible verdicts based on the nine letters sent after March 19, 1930. Instead, appellant was abandoned to the jury by his counsel with the following extraordinary request for an instruction:

"By Mr. Taylor: If your Honor please, I want to renew the motion for a directed verdict as to Gus Shores *and that is all I care to say.*"

"And that is all I care to say" as to one of his clients; that one is surely innocent. The other man he left to the tender mercy of the jurors, although the evidence is uncontradicted that as to nine of the crimes this one of his clients had no participancy in them. Such is the result of denying to an accused man a "fair opportunity to secure counsel of his own choice" and of predetermining a hearing on a constitutional issue, quite likely requiring a continuance, by holding "There will be no continuance in this case."

It is a fair inference that the trial judge made appellant's sentences concurrent because of his realization of the prejudicial character of appellant's defense, which the conflict of interests caused by his enforced appointment had created.

For the reason that appellant was denied due process and the added reason there has been an arbitrary abuse of discretion even in the absence of such denial, the judgment should be reversed.