## PHIPPS v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. April 2, 1918.)

### No. 1568.

1. CONSPIRACY ⚖️43(5)—SEDITIOUS CONSPIRACY—INDICTMENT—SUFFICIENCY.
   An indictment for seditious conspiracy under Criminal Code, § 6, must charge force, which cannot be implied from the words "feloniously, unlawfully, willfully, and maliciously"; but where the overt act is alleged in charging defendants with intent to engage in armed hostility against the United States "by attacking with force and arms" defendant is so apprised of element of force that to sustain a demurrer on such ground would give effect to a mere defect of form, contrary to Rev. St. § 1025 (Comp. St. 1916, § 1691).

2. CONSPIRACY ⚖️43(5)—SEDITIOUS CONSPIRACY—INDICTMENT—OVERT ACT.
   In an indictment for seditious conspiracy against the United States, it is not necessary that the overt act charged should be the accomplishment of the design of the conspiracy.

3. CONSPIRACY ⚖️47—SEDITIOUS CONSPIRACY—EVIDENCE—SUFFICIENCY.
   In a trial for seditious conspiracy under Criminal Code, § 6, certain uncontradicted evidence *held* sufficient to warrant the finding that the defendant was a participant with another in organizing and forwarding the unlawful enterprise to seize by force certain property of the United States.

In Error to the District Court of the United States for the Western District of Virginia, at Big Stone Gap; Henry Clay McDowell, Judge.

John W. Phipps and another were convicted, under section 6 of the Criminal Code, for conspiracy to seize, take, and possess by force property of the United States, contrary to the authority thereof, and defendant Phipps brings error. Affirmed.

Randolph Henry, of Roanoke, Va., for plaintiff in error.

R. E. Byrd, U. S. Atty., of Richmond, Va.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. William V. McCoy and John W. Phipps were convicted under section 6 of the Criminal Code (Act March 4, 1909, c. 321, 35 Stat. 1089 [Comp. St. 1916, § 10170]), which provides punishment for a conspiracy "by force to seize, take, or possess any property of the United States contrary to the authority thereof." The specific charge of the indictment was that the defendants "did feloniously, unlawfully, willfully, and maliciously conspire together to seize, take, and possess certain property of the United States, contrary to the authority thereof, which said property consisted of certain arms, ammunitions, and equipment under the control of certain military forces of the United States stationed in Wise county, Virginia, and other places."

⚖️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

[1] The defendant Phipps brings the case here, assigning error in overruling his demurrer to the indictment, and in refusing an instruction to acquit him for failure of evidence. The charge of force is necessary to meet the requirement of the statute (Baldwin v. Franks, 120 U. S. 678, 693, 7 Sup. Ct. 656, 763, 30 L. Ed. 766), and force is not implied in the words "feloniously, unlawfully, willfully, and maliciously." In the same count, however, the overt act of recruiting soldiers is charged to have been done "with the intent of engaging in armed hostility against the United States of America by attacking with force and arms the duly enlisted and organized military forces of the said United States," etc.; and all the overt acts charged necessarily implied that the conspiracy was with the intent to use force. Looking at the entire count, the defendants could not fail to understand that they were charged with a conspiracy to enlist men, and take by violence the arms and ammunitions of the government in the hands of its soldiers. To sustain the demurrer on this ground, therefore, would be to give effect to a mere defect or imperfection in a matter of form only, not tending to the prejudice of the defendants, contrary to section 1025 of Revised Statutes (Comp. St. 1916, § 1691).

[2] It is not necessary, as contended by the defendant, that the overt act charged should be the accomplishment of the design of the conspiracy. The Supreme Court decided in Goldman v. United States, 245 U. S. 474, 38 Sup. Ct. 166, 62 L. Ed. 410, on January 14, 1918, that averment and proof of the conspiracy with any overt act in furtherance of it is sufficient, whether the result of the conspiracy was to accomplish the illegal end or not.

[3] The evidence was plenary that McCoy was listing and pledging men under oath for the enterprise of resisting the military authorities of the government by blowing up bridges and seizing arms in the possession of its soldiers. The witness Day, after testifying that McCoy told him of the designs above mentioned and introduced him to Phipps as "Gen. Phipps," made this statement as to Phipps' participation:

"I shook hands with him (Phipps) and taken a chair, and he taken one, and he commenced talking about being at work hard; said, 'I have been working pretty hard;' and he said 'Mr. Day, you understand the situation' (Mr. Phipps did); 'you know what you have come here for;' he said, 'I have got up a list here; you may not like it very well; there is a negro on it;' and I said, 'We don't like niggers very much in Buchanan;' and he said, 'He asked me to put his name down;' and he said, 'I haven't had time to pay any attention to it that I should have, I have been busy working.' He referred to the list. I had been looking at when he said 'list'; subscribers; didn't say what, just the 'list.' Phipps did not go and state what they intended to do; more than he said, 'I will control some men here at the extract plant,' and said he could 'get about 150 men down at Dungannon.' I spoke to McCoy about a contract between Phipps—he was getting up—and he said, McCoy said to Phipps, 'Mr. Day thinks there ought to be a contract drawn between you and him;' and I said, 'Yes; ,there ought to be, to show what these men are to get;' that is, me and Phipps, to show what each man was to get. I had told McCoy before that, if I was going into it, I ought to have a contract with the general. Phipps said, 'We will give him one.' (Well, 'give him one?') McCoy did, after Phipps left. I turned the contract over to Mr. Devlin, as well as I recollect, at Roanoke. I think I have saw it since I come here. It is spelled at the heading of it 'Declaration of War by G. F. P,' as well as I

recollect. McCoy drew the contract and signed it after Phipps left the room. I don't know that he said to McCoy to give me one, but he said he had to get back to work."

This evidence was not contradicted, and it was sufficient to warrant the finding that Phipps was a participant with McCoy in getting up the list and forwarding the unlawful enterprise of which McCoy had told Day.

Affirmed.