STEPHENS v. UNITED STATES. *

(Circuit Court of Appeals, Ninth Circuit. December 1, 1919.)

No. 3349.

1. CRIMINAL LAW ⟨☞304(9)—INDICTMENT AND INFORMATION ⟨☞61—INDICTMENT FOR VIOLATION OF ESPIONAGE ACT.

An indictment need not allege that the United States was at war at the time of commission of the act charged, since, if material, the court will take judicial notice.

2. ARMY AND NAVY ⟨☞40—INDICTMENT FOR VIOLATION OF ESPIONAGE ACT.

An indictment for violation of Espionage Act, § 3 (Comp. St. 1918, § 10212c), by offering and selling a book opposing the war and deriding patriotism, with intent to create insubordination and disloyalty in the military and naval forces, held sufficient.

In Error to the District Court of the United States for the Southern Division of the Southern District of California; Benjamin F. Bledsoe, Judge.

Criminal prosecution by the United States against E. A. Stephens. Judgment of conviction, and defendant brings error. Affirmed.

Stephens asks reversal of a conviction for violation of section 3, title 1, of the Act of June 15, 1917 (40 Stat. 219, c. 30 [Comp. St. 1918, § 10212c]) known as the Espionage Act. The charge was that in March, 1918, at Redlands, Cal., Stephens did knowingly and feloniously attempt to cause insubordination, disloyalty, mutiny, and refusal of duty in the military and naval forces of the United States, by then and there "peddling, issuing, selling, and offering for sale" to various persons, among others A. H. Murray, a certain book entitled "The Finished Mystery," containing seditions and inflammatory statements and language, a portion of which language was as follows:

"Nowhere in the New Testament is patriotism (a narrow-minded hatred of other peoples) encouraged. Everywhere and always murder in its every form is forbidden; and yet, under the guise of patriotism, the civil governments of earth demand of peace-loving men the sacrifice of themselves and their loved

ones and the butchery of their fellows, and hail it as a duty demanded by the laws of heaven.

"If you tell me that this war is fought for the integrity of international law, I must ask you why it is directed only against Germany, and not also against England, which is an equal, although far less terrible, violator of covenants between nations? If you say it is fought on behalf of the rights of neutrals, I must ask you where, when, and by what belligerent the rights of neutrals have been conserved in this war, and what guaranty you can offer that, after all our expenditure of blood and money for their defense, these rights will not be similarly violated all over again in the next war by any nation which is battling for its life? If you say that it is fought for the security of American property and lives, I must ask you how and to what extent it will be safer for our citizens to cross the seas after the declaration of war than it was before? If you say that it is fought in vindication of our national honor, I must ask you why no harm has come to the honor of other nations, such as Holland and Scandinavia, for example, which have suffered even more than we, but which, for prudential reasons, refuse to take up arms? If you say it is a war of defense against wanton and intolerable aggression, I must reply that every blow which we have endured has been primarily a blow directed, not against ourselves, but against England, and that it has yet to be proved that Germany has any intention or desire of attacking us. If you say that this war is a life and death struggle for the preservation of civilization against barbarism, I must ask you why we remained neutral when Belgium was raped, and were at last aroused to action, not by the cries of the stricken abroad, but by our own losses in men and money? If you say that this war is a last resort in a situation which every other method, patiently tried, has failed to meet, I must answer that this is not true—that other ways and means of action, tried by experience and justified by success, have been laid before the administration and wilfully rejected. The war itself is wrong. Its prosecution will be a crime. There is not a question raised, an issue involved, a cause at stake, which is worth the life of one bluejacket on the sea or one khaki-coat in the trenches."

Paul W. Schenck and Richard Kittrelle, both of Los Angeles, Cal., for plaintiff in error.

Robert O'Connor, U. S. Atty., and W. Fleet Palmer, Asst. U. S. Atty., both of Los Angeles, Cal.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] The contention is that the indictment does not state facts sufficient to constitute a public offense, in that it failed to set forth that the United States was at war when the acts charged were done, and failed to allege that any attempt was made to cause insubordination, disloyalty, and refusal of duty by sale or offer of sale to any person who was registered or eligible for service in the military and naval forces of the United States. So far as material, section 3, tit. 1, of the act referred to, provides that whoever, when the United States is at war, shall willfully cause or attempt to cause insubordination, disloyalty, mutiny, or refusal of duty in the military or naval forces of the United States, shall be punished as provided by law. Inasmuch as the courts should take judicial notice of the joint resolution of Congress passed April 6, 1917, declaring that a state of war existed, between the United States and Germany (40 Stat. p. 1), we hold that neither an averment nor proof of the fact was essential.

[2] The allegation that the defendant knowingly and feloniously

attempted to create insubordination and disloyalty and refusal of duty, by selling and offering for sale the book described, was sufficient to admit evidence in support of the charge. It is difficult to gather any purpose other than a disloyal and wicked one on the part of one who, knowing the contents of the book described, deliberately offered the same for sale. The book rails at love of country, calls the prosecution of the war a crime, denies the truth of the fact that the war was a last resort, where other methods failed, and generally in other ways endeavors, not only to foment suspicion and hatred of the cause of the United States, but also to engender respect for the position of Germany as against the United States.

We are also of the opinion that the charge that defendant knowingly offered the book as described for sale, and sold it, with intent to do the things charged, was sufficient. Shilter v. United States, 257 Fed. 724, —— C. C. A. ——, does not conflict with this view, for in that case the charge was merely that the defendant uttered the seditious language which was set forth in the indictment with intent to cause insubordination, disloyalty, and refusal of duty in the military and naval forces of the United States. There was nothing in that indictment which connected the act of Shilter with the military or naval forces of the United States, and we held the indictment failed to set forth enough to advise the court that an offense had been committed. But here the charge is that in the attempt to cause disloyalty the defendant offered the book for sale, and sold it with the intent alleged, and the character of the book is shown by the excerpt from it. The rule announced in Goldstein v. United States, 258 Fed. 908, —— C. C. A. ——, is applicable. Kirchner v. United States, 255 Fed. 301, 166 C. C. A. 471; United States v. Eastman (D. C.) 252 Fed. 232.

We think that the evidence was sufficient to sustain the conviction. There is testimony to the effect that the defendant sold the book; that he told a young man 26 years old, who was registered under the Selective Service Draft Act that he ought to read the book; that if people would refuse to fight the country would be in a state of anarchy, and that some of the people would stay with the government, and some would fight against it; and that he did not approve of the war. The book has such assertions as that militarism is contagious; that "the parade of battleships can kindle fires in the blood of even peaceful peoples, and create naval appropriations in a dozen lands." In reference to military equipment it is said:

"This delusion threatens to become as mischievous as it is expensive. Every increase in the American navy strengthens the militarists in London, Berlin, and Tokio. The difficulty of finding a reason for an American navy increases the navy. No one outside the militarists can answer. Because there is no ascertainable reason for this un-American policy, the other American countries are becoming frightened. * * * A fleet of battleships gives a wrong impression of what America is, and conceals the secret which has made America great. Children do not know that we became a great world power without the assistance of either army or navy, building ourselves upon everlasting principles by means of our schools and churches. The down-pulling force of our naval pageant was not needed in a world already dragged down to low levels by the example of ancient nations, entangled by degrading traditions from which they are struggling to escape. The notion that this ex-

hibition of battleships has added to our prestige among men whose opinion is worthy of consideration, or has made the world love us more, is only another feature of the militarist delusion."

It is unnecessary to quote more at length. Whether the defendant intended that the book should cause disloyalty or refusal of duty among the military or naval forces of the country was a question for the jury. We find no error, and affirm the judgment.

Affirmed.