CRAPO v. UNITED STATES.

No. 1734.

Circuit Court of Appeals, Tenth Circuit.

Jan. 17, 1939.

Rehearing Denied Feb. 1, 1939.

Clyde Taylor and Harold E. Marshall, both of Kansas City, Mo., for appellant.

Summerfield S. Alexander, U. S. Atty., and Homer Davis, Asst. U. S. Atty., both of Topeka, Kan., for the United States.

Before PHILLIPS, BRATTON, and WILLIAMS, Circuit Judges.

PHILLIPS, Circuit Judge.

Crapo was tried and convicted on two counts of an indictment charging violations of the National Firearms Act, 26 U. S.C.A. §§ 1132–1132q. He was sentenced to serve a term of five years on each count but the sentence on count 2 was suspended and he was placed on probation for a period of five years to commence at the termination of the sentence on count 1.

Notice of appeal was filed on June 11, 1938. On July 6, 1938, the time within which to file the bill of exceptions and assignments of error was' extended by the trial court for a period of thirty days. They were not filed within that time, but this court under authority of Rule 4 of the New Criminal Rules, 28 U.S.C.A. following section 723a, extended the time for filing the bill 'of exceptions and assignments of error to November 28, 1938, and within that time 'they were duly filed and the appeal docketed. See Ray v. United States, 301 U.S. 158, 57 S.Ct. 700, 81 L. Ed. 976.

Count 1 of the indictment charged that on or about December 20, 1936, Glenn Van Hook and Alton Crapo had in their possession at, near, or about an outside garage located in the rear of 1637 Southwest Boulevard, Kansas City, Kansas, a Remington sawed-off shotgun, serial No. 130007, having a barrel less than 18 inches in length, to wit, 15-¼ inches in length, which they unlawfully, wilfully, and feloniously failed to register with the Collector of Internal Revenue for the District of Kansas.

Count 2 charged that on or about December 20, 1936, at, near, or about the rear of 1637 Southwest Boulevard, Kansas City, Kansas, Glenn Van Hook and Alton Crapo did then and there unlawfully, wilfully, and feloniously have in their possession, custody, and control one Remington sawed-off shotgun, serial No. 130007, having a barrel of less than 18 inches in length, to wit, 15-¼ inches, which firearm had been transferred in violation of 26 U.S.C.A. §§ 1132b and 1132c, in that they had failed to pay the tax of $200 on such firearm, to secure stamps showing the payment of such tax, to affix such stamps to' the order for such firearm, and to furnish a written order on an application blank in duplicate for that purpose issued by the Commissioner of Internal Revenue.

Count 1 is based upon 26 U.S.C.A. § 1132d, and count 2 on 26 U.S.C.A. §§ 1132b, 1132c, 1132e, set out in Note [1].

[1] Sec. 1132d: "(a) Within sixty days after the thirtieth day after June 26, 1934, every person possessing a firearm shall register, with the collector of the district in which he resides, the number or other mark identifying such firearm, together with his name, address, place where such firearm is usually kept, and place of business or employment, * * * Provided, That no person shall be required to register under this section with respect to any firearm acquired after the thirtieth day after June 26, 1934, and in conformity with the provisions of sections 1132 to 1132q.

"(b) Whenever on trial for a violation of section 1132e the defendant is shown to have or to have had possession of such firearm at any time after such period of sixty days without having registered as required by this section, such possession shall create a presumption that such firearm came into the possession of the defendant subsequent to the thirtieth day after June 26, 1934, but this pre-

sumption shall not be conclusive." 26 U.S.C.A. § 1132d.

Sec. 1132b: . "(a) There shall be levied, collected, and paid upon firearms transferred in the continental United States a tax at the rate of $200 for each firearm, such tax to be paid by the transferor, and to be represented by appropriate stamps to be provided by the Commissioner, with the approval of the Secretary; and the stamps herein provided shall be affixed to the order for such firearm, hereinafter provided for. The tax imposed by this section shall be in addition to any import duty imposed on such firearm." 26 U.S.C.A. § 1132b(a).

Sec. 1132c: "(a) It shall be unlawful for any person to transfer a firearm except in pursuance of a written order from the person seeking to obtain such article, on an application form issued in blank in duplicate for that purpose by the Commissioner. Such order shall identify the applicant by such means of identification as may be prescribed by regula-

26 U.S.C.A. § 1132(a) defines a "firearm" as follows:

"The term 'firearm' means a shotgun or rifle having a barrel of less than eighteen inches in length, or any other weapon, except a pistol or revolver, from which a shot is discharged by an explosive if such weapon is capable of being concealed on the person, or a machine gun, and includes a muffler or silencer for any firearm whether or not such firearm is included within the foregoing definition." .

The evidence of the government established these facts:

Dr. H. M. Wheeler of Kansas City, Kansas, owned certain garages in the 1600 block on Southwest Boulevard, Kansas City, Kansas. His wife rented one of the garages to a man who said his name was Hartman. This man paid the rent until May 25, 1935. Thereafter, Dr. Wheeler's house burned and he placed a note under the garage door notifying Hartman to pay the rent thereafter at Kroger's Grocery Store. In July and October, 1936, Crapo came to the Kroger Grocery Store, and on each occasion paid Reese, the store manager, $6 as rent for the garage. Reese gave him receipts for the rent in the name of Hartman. On December 15, 1936, officers of the Kansas City, Kansas, police department located in the garage an automobile reported to have been stolen. They found in the automobile a Remington sawed-off shotgun having a barrel of 15-¼ inches in length, a high-powered rifle, shotgun shells to fit the shotgun, rifle

shells to fit the rifle, pistol holsters, several sets of license tags from Minnesota, Missouri, and South Dakota, an overcoat, a raincoat, several cans of oil, and two large milk cans full of gasoline. These articles were removed to the police station and a 24-hour a day watch was placed on the garage by the police officers. On December 20, 1936, McMullen and Downs, of the Kansas City, Kansas, police department, were on duty watching the garage. McMullen saw a man unlocking the garage. He and Downs immediately ran to the garage, opened the door, and found Crapo and Van Hook inside. McMullen asked them what they knew about the car, and they said they would rather not talk. The officers searched Crapo and Van Hook and found a key on Van Hook which unlocked the garage door.

The shotgun had not been registered with the Collector of Internal Revenue for the District of Kansas.

Crapo stated he had known Van Hook for approximately one year; that he met Van Hook near the Katz Drug Store at Fortieth and Main Streets, Kansas City, Missouri, and accompanied him to a tavern; that he desired to purchase an automobile radio, and accompanied Van Hook to the garage for the purpose of looking at a radio. He denied that he paid the rent on the garage, and denied any knowledge of the automobile and articles found therein. He further testified that he was born in Stafford County, Kansas, and had lived most of his life in Kansas west of Hutchinson; that in October, 1936, he

tions under sections 1132 to 1132q: Provided, That, if the applicant is an individual, such identification shall include fingerprints and a photograph thereof.

"(b) The Commissioner, with the approval of the Secretary, shall cause suitable forms to be prepared for the purposes above mentioned, and shall cause the same to be distributed to collectors of internal revenue.

"(c) Every person so transferring a firearm shall set forth in each copy of such order the manufacturer's number or other mark identifying such firearm, and shall forward a copy of such order to the Commissioner. The original thereof with stamps affixed, shall be returned to the applicant.

"(d) No person shall transfer a firearm which has previously been transferred on or after the thirtieth day after June 26, 1934, unless such person, in addition to complying with subsection (c), transfers

therewith the stamp-affixed order provided for in this section for each such prior or transfer, in compliance with such regulations as may be prescribed under sections 1132 to 1132q for proof of payment of all taxes on such firearms.

"(e) If the transfer of a firearm is exempted from the provisions of sections 1132 to 1132q as provided in section 1132e, the person transferring such firearm shall notify the Commissioner of the name and address of the applicant, the number or other mark identifying such firearm, and the date of its transfer, and shall file with the Commissioner such documents in proof thereof as the Commissioner may by regulations prescribe." 26 U.S.C.A. § 1132c(a)–(e).

Sec. 1132e: "It shall be unlawful for any person to receive or possess any firearm which has at any time been transferred in violation of section 1132b or 1132c." 26 U.S.C.A. § 1132e.

worked at his father-in-law's ranch near Elk City, Kansas; that he there received an injury to his wrist and went to Wichita and later to Kansas City to obtain medical treatment for his injured wrist.

At the close of the evidence, counsel for Crapo interposed a motion for a directed verdict on the ground that the government had failed to prove that Crapo was in possession of the shotgun, and had failed to prove that the shotgun had not been registered in some other district in the United States.

The motion was overruled and an exception duly saved.

Crapo did not challenge the sufficiency of the indictment in the trial court. He contends here for the first time that count 1 is insufficient because it did not allege that Crapo failed to register the firearm in the district in which he resided, and did not allege that he resided in the District of Kansas, and that count 2 is insufficient in that the National Firearms Act did not impose upon him the duty to do any of the things which the second count alleged he failed to do.

18 U.S.C.A. § 556 provides "No indictment found and presented by a grand jury in any district or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

In Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861, the court said:

"The rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case

any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' "

After verdict, every intendment must be indulged in support of the indictment. The verdict cures mere formal or technical defects, unless it is apparent that they have resulted in prejudice to the defendant.[2]

The gist of the offense charged in count 1 is the possession of the firearm and the failure to register the same. Residence in a particular district is not an element of the offense. It is merely a collateral fact which determines the proper place of registration. Count 1 of the indictment charged the elements which constitute the gist of the offense, namely, possession of the firearm and failure to register the same. It did not directly allege the collateral fact which determined the proper place of registration. But we think that collateral fact is implied in the allegation that Crapo failed to register the firearm in the District of Kansas, and that the omission resulted in no prejudice to Crapo.

The evidence established that Crapo was born in Stafford County, Kansas; that he lived in that state most of his life; and that he resided there in October, 1936. A residence once established is presumed to continue in the absence of countervailing evidence.[3] We conclude the evidence was sufficient to sustain a finding by the jury that Crapo was a resident of Kansas during the years 1935 and 1936.

The payment of the rent by Crapo, and the fact that he went to the garage with Van Hook where the firearm was found in the automobile left in the garage were circumstances from which the jury was warranted in finding Crapo was in possession of the firearm.

It is urged that the possession of the firearm by Crapo and Van Hook was joint, and, therefore, it was incumbent upon the

2 King v. United States, 10 Cir., 55 F. 2d 1058, 1062, 1063; Coates v. United States, 9 Cir., 59 F.2d 173, 174; Sheridan v. United States, 9 Cir., 236 F. 305, 310; Hardesty v. United States, 6 Cir., 168 F. 25, 27; Dunbar v. United States, 156 U.S. 185, 191, 192, 15 S.Ct. 325, 39 L.Ed. 390; State v. Davis, 106 Kan. 527, 188 P. 231; Whim v. State, 117 Tenn. 94, 94 S.W. 674; State v. Coleman, 158 La. 755, 104 So. 705, 706.

3 United States v. Deans, 8 Cir., 230 F. 957, 959; Mitchell v. United States, 88 U.S. 350, 21 Wall. 350, 353, 22 L.Ed. 584.

government to allege and prove that neither of them registered the firearm in the district in which he resided. The act requires "Every person possessing a firearm" to register the same in the district in which he resides. It follows that registration by Van Hook would not absolve Crapo from failure to register the firearm in the District of Kansas, where Crapo resided.

The second count charges Crapo with possession of a firearm which had been transferred in violation of Sections 1132b and 1132c. The statute imposes the duty on the transferor to pay the tax and to affix appropriate stamps representing the tax to the order for the firearm. That portion of count 2 which charged Crapo with the failure to pay the tax and to affix the appropriate stamps to the order may be disregarded as surplusage. The written order contemplated by the act is an order to be given by the prospective transferee to the transferor on an application form issued in blank in duplicate for that purpose by the Commissioner. Such order form is to be made up in part from information to be furnished by the transferee and part from information to be supplied by the transferor, and when completed the duty is placed upon the transferor to forward the same to the Commissioner. This is made clear by Regulation 88 issued by the Commissioner of Internal Revenue pursuant to Section 12 of the act, 26 U.S.C.A. § 1132k.

It follows, we think, that count 2 sufficiently charged the transfer of a firearm not in pursuance of the written order required by Section 1132c, supra, and the unlawful possession of such firearm by Crapo.

There was no direct proof that the firearm was transferred to Crapo not in pursuance of a written order issued by the Commissioner as required by Section 1132c. That, however, was a negative averment in count 2, the facts with respect to which were peculiarly within the knowledge of Crapo. He necessarily knew whether the firearm was transferred to him without the written order required by Section 1132c, supra. The burden of overcoming such a negative averment rested upon Crapo.[4]

Furthermore, Crapo by denying possession of the firearm impliedly admitted that he did not secure the same pursuant to the written order required by Section 1132c.

It is urged that error was committed in the admission of the articles other than the shotgun found in the automobile and evidence that the automobile had been stolen. The facts with respect to the other articles found in the automobile were so interwoven with the facts respecting the firearm as to constitute part of the res gestae. Furthermore, this evidence tended to show that the persons using the garage were engaged in unlawful enterprises and were likely to have acquired the firearm unlawfully and to have failed to register the same. Such a person would naturally be disinclined to furnish the identification required of the applicant by Section 1132c. Relevant and competent evidence of guilt is not rendered inadmissible because it also tends to prove that the defendant committed another offense.[5]

---

[4] For analogous cases applying the rule see Goodfriend v. United States, 9 Cir., 294 F. 148, 150, Faraone v. United States, 6 Cir., 259 F. 507, 509, Giacolone v. United States, 9 Cir., 13 F.2d 108, 110, and McCurry v. United States, 9 Cir., 281 F. 532, in each of which the indictment charged defendant with possession of a still without having registered the same with the Collector of Internal Revenue, and it was held that the burden of proving registration of the still rested on the defendant, because that was a fact peculiarly within his knowledge; Montague v. United States, 9 Cir., 294 F. 277, Gee Woe v. United States, 5 Cir., 250 F. 428, and Taylor v. United States, 8 Cir., 19 F.2d 813, 816, in each of which the indictment charged failure to register as a dealer and pay the special tax as required by the Anti-Narcotic Act, 26 U.S.C.A. § 1041 et seq., and it was held that the burden of proving registration and payment of the tax rested on the defendant, because those were facts peculiarly within his knowledge, and Sauvain v. United States, 8 Cir., 31 F.2d 732, 733, and Martinez v. United States, 5 Cir., 25 F.2d 302, in each of which the indictment charged the sale, barter, or exchange of narcotic drugs not in pursuance of a written order on a form issued in blank for that purpose by the Commissioner, and it was held the burden was on the defendant to establish the existence of the written order, because that was a fact peculiarly within his knowledge.

[5] Astwood v. United States, 8 Cir., 1 F.2d 639, 642; Coulston v. United States,

We have given careful consideration to the other errors assigned and deem them to be without merit.

The judgment is affirmed.

10 Cir., 51 F.2d 178, 180, 181; Hood v. United States, 10 Cir., 59 F.2d 153, 154, 155; Suhay v. United States, 10 Cir., 95 F.2d 890, 894; Troutman v. United States, 10 Cir., 100 F.2d 628, decided December 8, 1938; Cook v. United States, 8 Cir., 28 F.2d 730, 732; Dixon v. United States, 8 Cir., 7 F.2d 818, 820; McCormick v. United States, 8 Cir., 9 F.2d 237, 239.