## HOPPER v. UNITED STATES.

### No. 10110.

Circuit Court of Appeals, Ninth Circuit.

Dec. 6, 1943.

Rehearing Denied Jan. 18, 1944.

Charlie W. Clark, of Phoenix, Ariz., for appellant.

Frank E. Flynn, U.S. Atty., and E. R. Thurman, Asst., both of Phoenix, Ariz., for appellee.

Before WILBUR, GARRECHT, DENMAN, MATHEWS, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

This appeal is from a judgment of conviction under § 11 of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 311. On an earlier hearing, 142 F.2d 167, the judgment was reversed on the ground of the insufficiency of the indictment. A rehearing was granted and the case was again argued, this time before the court sitting en banc. In view of the different result now reached we deem it advisable fully to recite the facts and to state our conclusions somewhat more at length, perhaps, than the gravity of the questions justifies.

Appellant is a native born citizen of the United States, and at the time of his registration under the Selective Service Act in October, 1940, he was twenty-two years old. He was then residing in Yavapai County, Arizona, of which Prescott is the county seat. On November 19, 1940, he filed with the Selective Service Board at Prescott his questionnaire showing the above facts and describing himself as a farm laborer and cattle raiser and as being unmarried and without dependents. In the questionnaire he stated that he is not a minister of religion and does not customarily serve as a minister, but that he is one of Jehovah's Witnesses and as such is entirely "neutral to the affairs of this world."

He was directed to report for physical examination, was examined, and was found fit for general service. He was thereupon, on December 7, 1940, placed in Class I-A

and was so notified. A short time later, at his request, he was furnished with a conscientious objector form, which he filled out and returned to the board under date of December 31, 1940. In this report he again described himself as one of Jehovah's Witnesses and as neutral in mundane affairs. He did not assert that he was a minister, but claimed only exemption from service under direction of the military because conscientiously opposed by reason of his religious belief to participation in war in any form. Under date of January 20, 1941, in line with the registrant's own report, the local board reclassified him, placing him in Class IV-E, that is to say, in the category described in § 5(g) of the Act, 50 U.S.C.A.Appendix, § 305(g), as one assignable to work of national importance under civilian direction. Notice of this classification was mailed him at the time.

In May, 1941, the National Director of the Selective Service System directed appellant's assignment to work of national importance in the civilian camp at Glendora, California. On June 11, 1941, an order to report for such duty, entitled in the name of the President of the United States and signed by a board member, was mailed him.[1] The date specified for his appearance was June 22, 1941, at 8:00 P. M. Appellant, in response to the notice, went to Prescott, contacted the board on June 19, and advised its members that he wished to appeal his classification on the ground that he was a minister, although he appears to have made no claim that his status in this respect had changed since the date of his registration. He was told, according to his own testimony, that he had waited too long and was not entitled to an appeal.[2] He claimed, however, that he had not received the notice of his IV-E classification mailed him in January.[3]

Next day, June 20, 1941, he appeared before the board and the members thereof interrogated him, apparently for the purpose of satisfying themselves whether there was any ground for considering his claim to be a minister and to determine his good faith or the lack of it.[4] Appellant's statements made at that time were taken by a stenographer and the transcribed questions and answers were introduced as an exhibit upon the trial of the case, forming part of the record here. In response to questioning by board members appellant, without further explanation, admitted having stated in his questionnaire that he was not and did not serve as a minister. While continuing to deny receipt of the notice of his IV-E classification he admitted having received all other communications directed to him by the board. He admitted that in May 1941 he had received from a Quaker organization in Washington a letter concerning his prospective service in the civilian camp, but had disregarded it. He admitted also having been told in May by a company servant of Jehovah's Witnesses that he might by changing his questionnaire be classified as a minister. This suggestion, too, he admitted having disregarded. From his story the board was warranted in believing not only that he was trifling with the truth when he denied knowledge of his IV-E classification, but that his present claim to exemption as a minister was a mere pretense.

On June 22, 1941, at the hour specified in the order requiring appellant to report, he presented himself to the board's administrative officer who again instructed him that it was his duty to go to the Glendora camp. His transportation and means for obtaining meals on the journey were tendered him but he declined to accept them, stating that he was appealing his case to state and national authorities and was not going to camp. It appears to have been his position then, as it was later at the trial, that he had the right to disobey while presently appealing from a classifi-

---

[1] This order recited that he had been classified as a conscientious objector, Class IV-E.

[2] Under the then regulations an appeal from a classification was required to be taken within ten days.

[3] Regulation 601.158, Code of Federal Regulations [1940 Supplement, p. 4415], provides in part as follows: "The mailing of any order, notice, or blank form by the local board to a registrant at the address last reported by him to the lo-

cal board shall constitute notice to him of the contents of the communication whether he actually receives it or not."

[4] There is no reason for cataloging this inquiry as a proceeding for reclassification under the regulations, and it is abundantly clear that the board did not so regard it. Appellant has at no time contended that the hearing effected a vacation or suspension of his existing classification. It was the position of his counsel on the trial that the board arbitrarily denied his claim to be classed as a minister.

cation made five months before at his own request. In sum, he undertook to formulate his own rules of procedure and to be the judge of his own case.

Thereafter the board brought the matter to the attention of the United States attorney, and appellant was indicted, tried, and convicted under § 11 of the Act providing that "any person charged as herein provided with the duty of carrying out any of the provisions of this Act, or the rules or regulations made or directions given thereunder, who shall knowingly fail or neglect to perform such duty," shall upon conviction be punished, etc.

We append the indictment in full in the footnote.[5] Appellant moved to quash and later moved for a directed verdict, both times on the ground of the insufficiency of the indictment and the unconstitutionality of the Selective Service Act. The record shows that but one specific ground of insufficiency was urged upon the trial court. We quote this objection on the margin in the language of appellant's then counsel.[6] The only specifications of insufficiency made in the brief here were (a) that the term "his/local draft board," as employed in the indictment, carried no legal meaning; and (b) that the indictment was defective in that it did not state when, where, or to whom the defendant was to report. However, the accused made no demand for a bill of particulars, and it is clear that he experienced no difficulty in understanding the charge and that he suffered no prejudice.

▮ The indictment charged the crime in the language of the statute, with particu-

lars of the direction given and disobeyed and the time and place of the disobedience. We think the essential elements of the offense are stated, if not directly, certainly by implication. In Crutchfield v. United States, 9 Cir., 142 F.2d 170, we held good, in the absence of objection, an indictment less specific, perhaps, than the present. And in United States v. Messersmith, 138 F.2d 599, November 11, 1943, the Court of Appeals of the Seventh Circuit held sufficient an evidently similar indictment saying: "Defendant contends that the indictment is vague and uncertain. It charges that defendant was duly assigned to work of national importance under civilian direction; that the Board directed him to report for such service and that he knowingly, intentionally and willfully failed to comply. This is a valid averment of violation of the law and fully advises defendant of the nature and character of the charge against him."

The courts are admonished by § 1025 of the Revised Statutes, 18 U.S.C.A. § 556, that "no indictment found and presented by a grand jury in any district or other court of the United States shall be deemed insufficient, nor shall the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form only, which shall not tend to the prejudice of the defendant."

▮ At least since Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861, the federal courts have determined the sufficiency of criminal pleadings on the basis of practical as opposed to technical considerations. As said by the court in

---

5 "The Grand Jurors of the United States, impaneled, sworn, and charged at the term aforesaid, of the Court aforesaid, on their oath present, that Robert Earl Hopper, having theretofore registered under the Selective Training and Service Act of 1940, on or about the 22nd day of June, A. D. 1941, and within the said District of Arizona, did knowingly, wilfully, unlawfully and feloniously fail and neglect to perform the duty required of him under and in the execution of said Act, and the rules and regulations made pursuant thereto, that is to say, that the said defendant, Robert Earl Hopper, having been theretofore classified by his local draft board at Prescott, Arizona, as a conscientious objector, and found fit for general service, did then and there, knowingly, wilfully, unlawfully and feloniously fail and neglect

to report as a conscientious objector for civilian work of national importance when notified so to do by his local draft board; contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America."

6 On the motion for a directed verdict, counsel stated: "Now, on the matter of the first motion, that the indictment fails to state a public offense or crime as set out in the motion to quash, but the motion to quash is not reviewable, so I make the same argument at the time that was made; that is, that the indictment is so indefinite, that it does not charge a public offense; that it does not say to whom he was required to report, nor by whom he was ordered to report and all of the elements of a faulty indictment are present in this indictment."

that case, 285 U.S. at page 431, 52 S.Ct. at page 419, 76 L.Ed. 861, "the rigor of old common-law rules of criminal pleading has yielded, in modern practice, to the general principle that formal defects, not prejudicial, will be disregarded. The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction,'" (citing cases). The court further observed, 285 U.S. at page 433, 52 S.Ct. at page 420, 76 L.Ed. 861, that "upon a proceeding after verdict at least, no prejudice being shown, it is enough that the necessary facts appear in any form, or by fair construction can be found within the terms of the indictment."

In the Hagner case the defendant was indicted in the District of Columbia for using the mails to defraud. The charge was that in the execution of the fraudulent scheme he had deposited certain mail matter in the United State Post Office in Pennsylvania, addressed to a person in the District of Columbia. The indictment did not state, in conformity with the statute, that he did "knowingly cause [the letter] to be delivered by mail according to the direction thereon." After conviction the defendant moved in arrest of judgment on the ground that while the indictment showed an offense in Pennsylvania, it failed to charge any offense within the District of Columbia. In support of the indictment the court had recourse to the well known evidentiary presumption that a letter, placed in the post office and properly directed, was actually received by the person to whom it was addressed. "While, therefore," said the court (285 U.S. at page 431, 52 S.Ct. at page 419, 76 L.Ed. 861), "the indictment does not in set terms allege delivery of the letter, a presumption to that effect results from the facts which are alleged." In holding the indictment sufficient, the court cited § 1025 of the Revised Statutes, heretofore quoted.

Many holdings of a cognate character, adhering to the mandate of the quoted statute, are cited by the court in the Hagner opinion, among these being Dunbar v. United States, 156 U.S. 185, 15 S.Ct. 325, 39 L.Ed. 390; Olsen v. United States, 2 Cir., 287 F. 85; Cohen v. United States, 6 Cir., 294 F. 488; Gay v. United States, 5 Cir., 12 F.2d 433; Musey v. United States, 5 Cir., 37 F.2d 673; Phipps v. United States, 4 Cir., 251 F. 879; Stephens v. United States, 9 Cir., 261 F. 590; Grandi v. United States, 6 Cir., 262 F. 123.

As recently as the present year the Court of Appeals of the Fourth Circuit in Nye v. United States, 137 F.2d 73, speaking through Judge Parker, has reviewed the rule of the Hagner case and its own earlier decision of similar import in Martin v. United States, 4 Cir., 299 F. 287. Said Judge Parker in the Nye opinion (137 F.2d at page 76): "Following the decision in the Martin case we have consistently followed the rule there laid down, sustaining under a variety of circumstances indictments drawn in general terms where they set forth the ingredients of the offense as defined by statute with sufficient definiteness and certainty to apprise the defendant of the crime charged and to protect him against further prosecution for the same offense." (citing cases).

Another forceful recognition of the modern rule is found in an opinion of Judge Learned Hand in United States v. Polakoff, 2 Cir., 112 F.2d 888, 134 A.L.R. 607, a prosecution involving a charge of conspiracy to obstruct justice. Said Judge Hand (112 F.2d at page 890, 134 A.L.R. 607): "The indictment merely alleged that the accused conspired 'to influence and impede the official actions of officers in and of the United States District Court * * * in order that said Sidney Kafton would receive a sentence of not more than one year and one day'. The challenge is that it should have specified who were the 'officers' that were to be so 'impeded.' We do not see why, if the accused were really in ignorance of this detail, they could not have been fully protected by a bill of particulars. Decisions such as Heaton v. United States, 2 Cir., 280 F. 697, and Kellerman v. United States, 3 Cir., 295 F. 796, are of doubtful service today, when objections which do not go to the substance of a fair trial no longer get much countenance. Hagner v. United States, 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861; Berger v. United States, 295 U.S. 78, 84, 55 S.Ct. 629, 79 L.Ed. 1314; Crapo v. United States, 10 Cir., 100 F.2d 996, 1000."

This court, too, has more than once announced the principle stated in the fore-

going authorities, and has adhered to the command of the quoted statute. Woolley v. United States, 9 Cir., 97 F.2d 258, 261; Zuziak v. United States, 9 Cir., 119 F.2d 140, 141. Cf. Ackerschott v. United States, 9 Cir., 139 F.2d 114, decided Nov. 11, 1943.

 We hold that the indictment is sufficient and that the commission of the offense was amply established.[7]

 A few points remain to be noticed. Appellant attacks the Selective Service Act as unconstitutional on the ground that it prohibits the free exercise of religion, deprives appellant of liberty and property without due process, and condemns him to involuntary servitude not as punishment for crime. Also that the Act delegates legislative powers. These propositions, in one guise or another, have been advanced again and again, both in this and in the first World War, and have uniformly met with rejection. Selective Draft Law Cases (Arver v. United States), 245 U.S. 366, 38 S.Ct. 159, 62 L.Ed. 349, L.R.A.1918 C, 361, Ann.Cas.1918B, 856; Goldman v. United States, 245 U.S. 474, 38 S.Ct. 166, 62 L.Ed. 410; O'Connell v. United States, 253 U.S. 142, 40 S.Ct. 444, 64 L.Ed. 827; United States v. Stephens, D.C., 245 F. 956; United States v. Herling, 2 Cir., 120 F.2d 236. Congress and the selective service authorities alike have been considerate in their treatment of those possessing scruples against participation in war. Surely it is not expecting too much to require of them that they do civilian work of national importance at a time when their brothers, under the same compulsion, are giving their lives for them and for the Nation. As we have seen, appellant was accorded due process of law. The board did not act arbitrarily, either in classifying him or in directing him to report for service in line with his classification.

 Appellant assigns as error numerous rulings on the admission of evidence. His objections were to exhibits comprising his signed questionnaire, his conscientious objector report, and other documents relating to his registration and sufficiently identified as official records of the selective service board. There was no error in admitting these exhibits.

The judgment is affirmed.

MATHEWS, Circuit Judge (concurring in the result).

Appellant was indicted for violating § 11 of the Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 311, and moved to quash the indictment. The motion was denied. Appellant pleaded not guilty and was tried. At the close of appellee's evidence, appellant moved for a directed verdict. The motion was denied. Thereafter appellant introduced evidence, the case went to the jury, and appellant was convicted, was sentenced and has appealed.

Twelve alleged errors are assigned. Assignment 1 is that the trial court erred in denying appellant's motion to quash the indictment. The denial of such a motion is not reviewable.[1]

Assignments 2-11 are that the trial court erred in admitting evidence. These assignments do not, as required by Rule 2(b) of our rules governing criminal appeals, "quote * * * the full substance of the evidence admitted." Hence these assignments need not be considered.[2]

Assignment 12 is that the trial court erred in denying appellant's motion for a directed verdict at the close of appellee's

---

[7] The bill of exceptions does not contain all the evidence, but we can in a proper case, under Rule 9 of the Criminal Appeals Rules, 18 U.S.C.A. following section 688, order correction of the bill. Ray v. United States, 301 U.S. 158, 57 S.Ct. 700, 81 L.Ed. 976. For that reason we have examined the reporter's transcript of the evidence and the exhibits, which were filed in this court, to ascertain whether a correction of the bill would aid appellant. From such examination it is apparent that it would avail the appellant nothing to have the bill of exceptions amended to include the evidence shown in the transcript. This method of dealing with the problem has been followed for the reason that the parties have referred to the reporter's transcript and in part based their arguments upon it. However, we desire it to be understood that this procedure is not to be taken as establishing a precedent for the use of such a transcript.

[1] Ramirez v. United States, 9 Cir., 23 F.2d 788, 789; Johnson v. United States, 9 Cir., 59 F.2d 42, 44; Sutton v. United States, 9 Cir., 79 F.2d 863, 864.

[2] Wheeler v. United States, 9 Cir., 77 F.2d 216, 218; Levine v. United States, 9 Cir., 79 F.2d 364, 367; Muyres v. United States, 9 Cir., 89 F.2d 783; Levey v. United States, 9 Cir., 92 F.2d 688, 692; Waggoner v. United States, 9 Cir., 113 F.2d 867, 868; Utley v. United States, 9 Cir., 115 F.2d 117, 119.

evidence. Appellant waived the motion by introducing evidence in his own behalf.[3]

The judgment should be affirmed.

DENMAN, Circuit Judge (dissenting).

I agree with the majority that it was our duty to examine the transcript of testimony admitted as part of the record upon the stipulation of counsel and quoted from by the appellee in support of its contention that the court had not erred in denying appellant's motion for an instructed verdict because of failure to present evidence showing the offense was committed.

I am unable to agree with Judge MATH-EWS' concurring opinion that we cannot consider, what the Government considered and relied upon on the rehearing, namely, the motion for such an instruction, because it does not appear in the bill of exceptions that the motion was made at the conclusion of the evidence. We have held the exact contrary. In Bailey v. United States, 9 Cir., 13 F.2d 325, in reversing the judgment of the lower court finding the defendant guilty of defrauding the United States, Judge Rudkin's opinion states "We are * * * aware there was no request for an instructed verdict at the close of the testimony, as suggested by counsel; but if *there is no competent testimony to support the verdict of guilty,* and more especially if it *appears affirmatively that no crime has in fact been committed, the right and duty of this court* to order a reversal is not open to question." (Emphasis supplied.)

If there be any group of cases where the requirement of 28 U.S.C.A. § 391 to ignore technical defects should be observed, it is in those of the conscientious objectors. The Supreme Court has made clear enough the wrong in the approach of the trial of Jehovah's Witnesses as if they are all draft dodgers "who should be sent to the front line trenches." A great part of the youth of that religious organization belong to the generation whose adolescence came in the period between the first and second World Wars. That was the period when parents proclaimed "We did not bring our boy into the world to become a soldier." Mothers drilled into their sons the horror of war in which they would have to maim and kill their fellow man.

No doubt draft dodgers hypocritically avail themselves of a pretended acceptance of a religion based upon such principles. However, it is but natural that such a period with such teachings in American families would make the horror and wrong of war a part of the compelling moral convictions of many of their youth.

There is nothing in the evidence of this case to warrant a doubt as to Hopper's sincerity or for the suggestion that he did not tell the truth when he said he had not received a notice of his requested classification. That, under the rule established by the majority, was entirely irrelevant to his guilt. He cannot complain of the failure to receive a notice that he was placed in the very classification for which he applied. In the absence of the judge's instructions it is unfair to Hopper to assume that the judge did not so instruct the jury and hence take from its consideration the question of Hopper's veracity. His testimony at the trial and that of other witnesses that he was a duly appointed minister in his religion and that he had been preaching its doctrines prior to his application for reclassification as such a minister was not questioned.

It is my opinion that Hopper was entirely justified in his failure on June 22, 1941, to go to the camp to which the board had ordered him. This is because only a registrant in class IV-E is subject to such an order. Before June 22nd, the effective date of the order, that is on June 20th, the board took him from that classification by entertaining his petition for reclassification in IV-D, a minister of religion, and hence subject to no board order. Thereafter they had not classified him "anew" in either IV-D or IV-E as required by the then regulations.

Prior to May 28, 1941, on an application for reclassification the registrant continued in his prior classification during the reclassification proceeding. The regulation appearing at pages 4449-50 of the Code of Federal Regulations, Supplement 1940, Title 32, provides

"§ 603.387 *Reconsidering Classifications.* Upon receiving new evidence the local board may at any time before induction reconsider the classification of any registrant. If the local board places the registrant in a different classification, the board shall mail a Notice of Classification (Form 57) to the registrant and shall notify the gov-

---

[3] Baldwin v. United States, 9 Cir., 72 F.2d 810, 812; Sheridan v. United States, 9 Cir., 112 F.2d 503, 504.

ernment appeal agent. If the local board refuses to reclassify, after the registrant has requested reclassification because of a change in circumstances, it shall mail *a Notice of Continuance of Classification* (Form 58) to the registrant." (Emphasis supplied.)

About three weeks before June 22nd, when he failed to report, Regulation 603.387 was significantly amended by Executive Order of May 28, 1941, 6 Fed.Reg. 2603. The portion concerning a continuing classification disappeared. Instead, the May 28th Order provided, in Regulation 385, that no classification is "permanent." 386 gives the board the power to reopen the classification on its own motion. 387 and 387(b) provide that in such a reclassification proceeding the classification shall be considered "anew" with the same right of appearance as at the original classification and its "determination shall be, and have the effect of, a new and original classification *even though the registrant is again placed in the class that he was in before the case was reopened.*" (Emphasis supplied.)

The bill of exceptions shows that at the conclusion of the Government's case it offered evidence, uncontradicted in the transcript of the entire case, that such an application was entertained in a formal proceeding by the board entitled

"Proceedings Before the Local Board of Yavapai County, June 20, 1941

"Present: Alfred B. Carr, Chairman, Lauren V. Seares, Joseph W. Berg, Egbert K. Dutcher, Members, and Nellie G. Prince, Stenographer.

"Order No. 217

"In the Matter of the Application of Robert Earl Hopper, Jr., for Classification as a Minister of Religion, and his Application for Extension of Time within which to Appeal the Decision of the Local Board of Yavapai County."

In that proceeding Hopper suffered from the want of counsel denied him by the regulations, and he and the witness he offered made a poor showing. It well could have warranted his "being *again* placed" in IV-E "the class that he was in *before*" the application was considered. While the rule gave him the right to appeal it could be argued that it would have been of no avail. Quite likely the board was not aware of the change in the regulation by

the Executive Order of three weeks before and hence failed to reclassify.

That, however, is entirely outside the question whether we, in effect, shall send an innocent man to prison by affirming a wrongful conviction. The fact is that he had been unclassified and was not shown to be reclassified "again" and "anew."

On the Government's showing, on June 22, 1941, when Hopper failed to report, he was not in any class on which a "duty" under 50 U.S.C.A.Appendix, § 311 could be created requiring him to respond to any board's order and hence that failure constituted no crime. The judgment should be reversed.