**NEWMAN et al. v. UNITED STATES.**

No. 10990.

Circuit Court of Appeals, Ninth Circuit.

May 16, 1946.

As Amended May 21, 1946.

Rehearing Denied July 16, 1946.

Writ of Certiorari Denied Oct. 21, 1946.

See 67 S.Ct. 115.

David H. Cannon, of Los Angeles, Cal., for appellants Newman and Files.

David H. Cannon, of Los Angeles, Cal., and Simeon Sheffey, of San Francisco, Cal., for appellant Cain.

Frank J. Hennessy, U. S. Atty., and William E. Licking, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before MATHEWS, HEALY, and BONE, Circuit Judges.

HEALY, Circuit Judge.

Appellants Cain, Newman and Files, with several others, were indicted for conspiracy to sell whisky at prices in excess of those permitted by the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., and regulations thereunder. The court, sitting without a jury, found them guilty as charged. Sentences of a year and a day were imposed on Newman and Cain and each was fined $10,000. Files was sentenced to imprisonment for nine months and fined $5,000.[1]

[1] The indictment named seven defendants, Charles Malaby, Nathan Newman, W. O. Files, R. H. Shaffer, Oscar R. Lowenthal, Primo Rocco, and Burt Cain.

The evidence discloses that early in 1944 Malaby, Nathan Newman and Morris Newman[2] decided to go into the whisky wholesaling business. They planned to get whisky from the East and to sell it at over-ceiling prices, but with orders or invoices showing only ceiling prices. The amount over ceiling was to be collected in cash. Files, a San Francisco realtor, agreed to act as escrow holder for these cash "overages" and the purchasers were given to understand that money deposited with him would be held until they received their whisky or were satisfied that it would be delivered. However, it was agreed among the defendants that money so received would be turned over to Nathan Newman immediately to be used in financing purchases from distillers. Two sales were arranged in February and purchasers placed overages in escrow with Files who immediately gave the money to Newman.

Since it was necessary to have a license to handle the liquor, the Newman brothers contacted a commission liquor salesman, Cain, in Los Angeles and loaned him $5,000 to assist in establishing a business. On March 6, 1944, Cain secured a wholesale liquor license. Malaby then went to Los Angeles to meet Cain and discuss the prospective purchases from the eastern distiller. During the course of conversations with the Newman brothers and Malaby, Cain learned that overages had already been collected from two purchasers.

Nathan Newman was made sales manager of the International Import Co., the company formed in pursuance of Cain's license; Morris Newman was made purchasing agent and Malaby commission salesman. Malaby was to return to San Francisco, take more orders, and send overages to Cain in Los Angeles to finance the shipment from the East. Upon his return to San Francisco, Malaby obtained the services of Lowenthal and Rocco and of others not named in the indictment. Malaby and these men got orders for which over $60,000 in overages was collected, $25,000 going through the escrow managed by Files. This money, minus certain expense items, was sent to Los Angeles to be turned over to Cain. When it appeared that a carload of whisky was en route, Malaby and Nathan Newman collected ceiling prices still due, delivered invoices, and in many instances destroyed receipts for overages.

The scheme was exposed in May shortly after the arrival and delivery of the whisky which was condemned by state authorities as unfit for consumption. Refunds were made to a few purchasers, but funds on hand were insufficient to meet the demands. Finally, unrepaid purchasers complained, bringing the situation to light.

1. Appellants assert that the indictment is defective in five respects, four of which are of so trivial a nature as not to justify comment.[3] The fifth is that no continuing conspiracy is charged by the language, "by wilfully selling and deliver-

---

Malaby and Rocco pleaded guilty and were used as witnesses by the prosecution. Shaffer and Lowenthal were found guilty. The latter entered upon the service of his sentence without appeal. Shaffer filed an appeal, but has presented no brief or argument. The evidence clearly shows his participation in the conspiracy.

[2] Morris Newman was not indicted or tried.

[3] The indictment declared, "That Charles Malaby, Nathan Newman, W. O. Files, R. H. Shaffer, Oscar R. Lowenthal, Primo Rocco, Burt Cain (hereinafter called said defendants), at a time and place to said Grand Jurors unknown, did unlawfully, wilfully, knowingly and feloniously conspire and agree together and with divers other persons to said Grand Jurors unknown, to commit offenses against the laws of the United States, to-wit, offenses in violation of Title 50 United States Code, Appendix, Sections 904a–925, by wilfully selling and delivering and by wilfully offering to sell and deliver, a certain commodity, to-wit, distilled spirits (whiskey), at prices over and in excess of the maximum prices duly established by the Price Administrator by regulations and orders duly made and promulgated under the provisions of 50 United States Code, Appendix, Section 902(a), and that thereafter and during the existence of said conspiracy and to effect the object thereof, one or more of said defendants as hereinafter mentioned by name, did at the times and places hereinafter set out, and within the jurisdiction of this Court, commit the following acts in furtherance of said conspiracy:" Then followed a specification of overt acts.

ing and by wilfully offering to sell and deliver whiskey. * * *" It is said that this constitutes, in effect, an allegation of the commission of a substantive offense and that the overt acts set out become meaningless. However, the plain intent of the indictment was to charge a criminal agreement to commit the offenses of wilfully selling and offering to sell whisky in violation of the price regulations. Although the pleading might have been framed with greater nicety, it was clear enough to inform the accused of the crime with which they were charged. Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; Hopper v. United States, 9 Cir., 142 F.2d 181.

■ 2. During the course of the trial numerous objections were made to the admission of testimony as to conversations had with persons outside the presence of certain of the defendants. Such conversations related to negotiations for the sale of whisky at over-ceiling prices and for collection of cash overages. Appellants admit that such testimony was proper if construed as evidence of acts by a conspirator committed at the time of the existence and in furtherance of the conspiracy alleged. A reading of the transcript leaves no doubt that these conversations were properly connected with all the defendants by the time the government closed its case. Thus there is no error in the respect contended. Smith v. United States, 8 Cir., 267 F. 665, 668; Marron v. United States, 9 Cir., 8 F.2d 251, 257; United States v. Compagna, 2 Cir., 146 F.2d 524, 530. The testimony of Malaby, who was called as a witness for the prosecution, was particularly inculpatory.

■ Appellants assert that, "the prosecution was able to get the testimony of all of the liquor purchasers in evidence by asserting that those purchasers themselves were conspirators." There is no warrant in the record for so broad a statement. The theory was suggested by government counsel only once when a purchaser was asked concerning his knowledge of price ceilings, i.e., that he knew an illegal transaction was being negotiated. At all other times evidence of conversations with pur-

chasers was admitted under the theory that it was evidence of the acts of a defendant committed in furtherance of the conspiracy during its existence and subject to a motion to strike "if not connected up." If there was any error in admitting testimony of a purchaser's knowledge of the illegal nature of a sale, it was cured by the volume of other and clearly competent evidence supporting a determination that prices in fact were over-ceiling.

■ 3. Appellants attack the sufficiency of the evidence to sustain a conviction of any of them. The contentions made in this connection can hardly be taken seriously. For instance, it is said, "only the witnesses Malaby, Lichtenberg, Spenger, Fuchslin, Figone, Caputa, McNeil, Smith, Cardinelli, de Georgis, Bryden, Nomellini, Benson, de Silva, Costa, Burnett, Goldstein and Williams even mentioned Newman." That should have been witnesses enough. The testimony was ample, if believed, to convict each of the appellants. Questions of credibility were for the trial court.

Affirmed.